**Teamie McNealy, Appellee, v. Illinois Central Railroad Company, a Corporation, Appellant.**

**Gen. No. 48,950.**

First District, Third Division.

September 18, 1963.

461

William F. Bunn and Lawrence Lawless, of Chicago (Joseph H. Wright, of counsel), for appellant.

Warren J. Hickey and William J. Harte, of Chicago, for appellee.

MR. JUSTICE McCORMICK delivered the opinion of the court.

An action was brought by Teamie McNealy against the Illinois Central Railroad Company to recover damages for personal injuries sustained by the plaintiff while a passenger aboard the defendant's passenger train. The plaintiff alleges that the injuries resulted from the alleged negligence of the defendant in making an emergency stop and because of the improper construction of the chairs in the ladies' powder room. There is no dispute that the plaintiff was a passenger aboard defendant's train and that an emergency stop was made. Nor is there any dispute that the plaintiff was injured, though the defendant denies that she was injured to the extent which she alleges. The case was tried by a court and jury. The jury found in favor of the plaintiff and against the defendant, and assessed the plaintiff's damages in the sum of $10,000. Judgment was entered upon the verdict. At the close of all the evidence the plaintiff had moved for a directed verdict, which motion was denied by the trial court. The trial court overruled the defendant's post-trial motion for judgment notwithstanding the verdict or in the alternative for a new trial, and also overruled defendant's motion for a remittitur as a condition for the denial of a new trial.

The defendant here contends that the trial court should have entered judgment notwithstanding the verdict because there was no evidence showing negligence on the part of the defendant, or, in the alternative, granted a new trial on the grounds that the

verdict is against the manifest weight of the evidence, and that the trial court was in error in its rulings on evidence and instructions during the trial. The defendant also contends that the verdict is excessive.

On September 13, 1954 plaintiff was a passenger aboard the twelfth coach of defendant's southbound train No. 3, "The Louisiane." The train consisted of two diesel locomotives and sixteen cars, en route from Chicago to New Orleans, plaintiff's destination. The train was behind schedule because of an inoperative engine in one of the locomotives and could not make up time. Immediately prior to the accident the train was proceeding slightly uphill at a speed of forty miles per hour. As the train approached Gallman, Mississippi, which was not a scheduled stop, an emergency stop was made to avoid striking an automobile which came upon the track and stopped in front of the train. At the time the plaintiff was in the defendant's powder room sitting on a stool fixing her hair before a mirror. The stool, or chair, on which the plaintiff was sitting at the time of the accident had no sides. The plaintiff testified that when the train came to a sudden stop she tried to catch the sides but that she had nothing to hold on to and was twisted and thrown against the floor of the powder room on her back and left leg.

A witness, Alida Fontana, testified on behalf of the plaintiff that at the time she was also in the powder room sitting in a big chair with arms, and that when the train jerked unexpectedly she held on to the sides and did not fall. Mrs. Fontana testified that there was but one jerk and there was no warning of any stop.

The law governing the duty of a railroad company to its passengers requires no citation of authority. It owes to the passenger the highest degree of care consistent with the practical operation of the railroad and the mode of conveyance adopted. The defendant

argues strenuously that there was no negligence in the conduct of the engineer at the time when he made the emergency stop. In 10 Am Jur Carriers, § 1344, it is said:

> "The decisions are in accord upon the proposition that a carrier is not liable for injuries to a passenger resulting from the application of the emergency brakes in order to avoid or prevent an imminent danger not otherwise avoidable, and reasonably believed to be attended with more serious consequences than the sudden application of the brakes. Where, however, the danger sought to be avoided by the sudden application of the brakes is due to the carrier's negligence, the carrier will not be excused from liability for injury to a passenger occasioned by the sudden stopping of the train. Thus, a railroad company will be liable for injury to a passenger caused by the sudden application of the emergency brake to avoid striking a traveler at a crossing, if the carrier is negligent in failing to give the traveler timely warning or to observe his danger in time to stop without resort to the emergency brake. The question whether such an emergency exists as will excuse the carrier from liability for injury to a passenger caused by the sudden checking or stopping of a train or car is obviously dependant upon the circumstances surrounding each case."

"The degree of care required of a common carrier is not capable of a precise formulation, applicable to all situations that may arise. In general, however, carriers of passengers are required to exercise the highest degree of care, vigilance, and precaution for the safety of those it undertakes to transport. . . . It is clear that the rule does not require such a degree of vigilance as will be wholly inconsistent with the car-

rier's methods of transportation, or impracticable to such an extent as to interfere with its regular business. . . . The application of this rule obviously will depend upon the factual situation in each case." 10 Am Jur Carriers, sec 1245. It has been said that the obligation of a common carrier is to do all that human care, vigilance and foresight could reasonably do, consistent with the mode of conveyance and the practical operation of the road, to convey its passengers in safety to their destination. Alton Light and Traction Co. v. Oller, 217 Ill 15, 75 NE 419. The negligence of the carrier must have been the proximate cause of the accident. In Neering v. Illinois Cent. R. Co., 383 Ill 366, 50 NE2d 497, the Supreme Court said:

"The injury must be the natural and probable result of the negligent act or omission and be of such a character as an ordinarily prudent person ought to have foreseen as likely to occur as a result of the negligence, although it is not essential that the person charged with negligence should have foreseen the precise injury which resulted from his act."

Questions as to negligence, due care, and proximate cause are ordinarily questions of fact for a jury to decide. Ney v. Yellow Cab Co., 2 Ill2d 74, 84, 117 NE 2d 74, 80. It is the rule that where a judgment notwithstanding the verdict is sought by the defendant the question presented is whether there is any evidence which, taken with the intendments most favorable to the plaintiff, tends to prove the charge of the complaint. A reviewing court in considering a motion to set aside a verdict of the jury because it is against the manifest weight of the evidence has no right to substitute its judgment for the verdict of the jury and

judgment of the trial court unless the opposite result is clearly apparent and evident.

▮ In the instant case on this particular element in the case the trial court properly refused to direct a verdict in favor of the defendant or to enter a judgment notwithstanding the verdict. An examination of the evidence would indicate that the jury could properly draw an inference therefrom that the engineer at the time and place in question was not in the exercise of the standard of care which the law imposes upon him. The testimony of the engineer and the fireman is in conflict, both as to the time when the engineer first applied the brakes and as to the type of application which he then made.[1] The fireman testified that the engineer made a "heavy service" application of the brakes. The engineer testified that he made a medium application. The witness Fontana testified that there was but one jerk of the train, which occurred at the time when the train stopped. There is further testimony in the record that ordinarily the fireman sat in the front of the lead engine on the opposite side of the seat occupied by the engineer. The fireman testified that at the time of the occurrence he was standing back of the engineer. The engineer testified that the fireman had been in the second locomotive trying to do something to the defective diesel engine. He then testified that the fireman came out of the engine room and was standing two or three feet from where the engineer was, and that they looked at each other as if to say something. The engineer stated that he thought that the fireman was going to talk to him about the defective engine. The engineer testified that he then "looked out the window and saw the automobile on the track, I started—I went into the service applica-

---

[1] With reference to the testimony of the fireman and the engineer the abstract is inadequate, and in order to get a clear picture of their testimony it was necessary to go to the record.

tion and then went into the emergency position." He stated that at that time, i. e., when he started the service application, he was a quarter of a mile away from the grade crossing.

The engineer testified that as he approached a point north of Gallman, Mississippi, which was not a scheduled stop, there was an automobile approaching a grade crossing over the track, and which, when the grade crossing was "about a quarter of a mile from where I could see, he [the driver of the automobile] drove down a hill on the track and stopped on the track." The automobile was traveling on a road which crossed the railroad tracks. The witness also testified that he saw the car as it approached the tracks and started the bell and whistle because at that time he was at the whistling point where the sign indicated that the engineer should warn persons approaching the crossing. He also testified that he started to blow the whistle and apply the brakes after the men "sat on the track. They didn't make any move. I could see they didn't make any effort to move of any kind." He then testified that he started the service application, which is used to slow down the train so that it is brought under control, and stated that at that time the train was traveling at 40 miles an hour, or 60 feet a second. He also testified that he did not remember how far he was from the crossing when he made the emergency application. After he had applied the emergency application and when the engine was about a car length and a half from the crossing the men got their automobile started and moved off the crossing. The train passed them, missing the car by only a foot and a half.

The fireman testified that when the car stopped on the tracks the train was approximately 10- or 12-car lengths from the automobile; that the length of a passenger car is approximately 80 feet, and at that time

467

the engineer made a "heavy service reduction of the service brakes of the train"; that after he made the heavy service application he made an emergency application when the front of the locomotive was approximately five car lengths from the crossing. On cross-examination he testified that at the time the automobile was approaching the crossing the locomotive was about 1,000 feet back; that the engineer first applied the brakes when the automobile stopped on the track; and that the heavy service application of the brakes would affect the movement of the cars.

The engineer testified that at the time when he made the service application of brakes the car was on the track. The engineer also testified that he had started to apply the brakes a quarter of a mile from the crossing, which would be 1,320 feet. The fireman testified that at the time the automobile was approaching the crossing the locomotive was about 1,000 feet back and that the engineer made the service application of the brakes when the automobile stopped on the tracks. He also testified that he saw the automobile 20 feet from the track moving toward the crossing. From this testimony the jury could draw an inference that the engineer was inattentive and was either conversing or about to converse with the fireman. We must bear in mind that the train at that time was traveling at 60 feet a second. On that phase of the case we find that the verdict of the jury was not against the manifest weight of the evidence, and the trial court properly denied the motion for judgment notwithstanding the verdict or in the alternative for a new trial.

■ The plaintiff also argues that the carrier was negligent in providing a swivel chair without arms in the ladies' powder room, and that a proximate cause of the injury was the failure to have arms on the chair. Mrs. Fontana testified that she was sitting in

468

a chair with arms and that because of the arms she was not thrown to the floor. The plaintiff testified that she had nothing to hold on to and that at the time of the sudden stop she was thrown to the floor of the car in a twisted position. "The obligation of a carrier to provide safe appliances extends to every type of appliance belonging to, and used by, the carrier in its business of transporting passengers, and for the slightest fault or negligence in this regard, from which injury results to the passenger, the carrier is liable in damages." 10 Am Jur Carriers, § 1315. The carrier is required to guard against injuries resulting to a passenger resulting from usual or unexpected occurrences if such occurrences were within its knowledge or were such that in the exercise of due care and diligence could have been reasonably anticipated and provided against. Neering v. Illinois Cent. R. Co., supra. Defendant introduced in evidence certain pictures of the type of seats referred to in the evidence, and it put on the stand two witnesses, one of whom testified that a similar type of chair was used in New York Central Railroad passenger coaches. The other testified that chairs of the same type were used in the passenger cars of the "Milwaukee" road. The defendant argues that the plaintiff was required to prove that the similar type of chair was not used by other common carriers. Such proof is not an essential element of the plaintiff's case, and the case of Grubczak v. Chicago Rys. Co., 242 Ill App 384, which is cited by defendant in support of its argument, is not in any way applicable. In 28 ILP Negligence, § 26, it is stated:

> "In determining whether due care has been exercised in a given case, conformity to custom or usage may be considered. However, customary methods or conduct do not furnish a test which is conclusive or controlling on the question wheth-

er there has been an exercise of due care or whether certain conduct amounted to negligence.

"A custom or usage cannot alter or change the standard of conduct required by law, and the fact that a thing is done in the usual way does not furnish excuse for a failure to exercise proper care or for negligent conduct."

The doing of a thing in the usual way is not evidence that such way is safe, and is no excuse for negligence. Chicago, C. R. I. & P. Ry. Co. v. Daugaard, 118 Ill App 67. Also see Rylander v. Chicago Short Line Ry. Co., 19 Ill App2d 29, 153 NE2d 225. There is a serious question as to whether or not the proof of the practice of two other railway companies is sufficient to establish a custom or usage. The evidence was offered and admitted for the consideration of the jury, but was not controlling, and the jury had a right to determine, as they properly could, whether or not the use of the type of a swivel, armless chair in the ladies' powder room was dangerous considering the high degree of care which is imposed upon carriers in regard to their passengers, also bearing in mind the fact that the necessity imposed upon the engineer of a train to come to a sudden stop has been greatly increased by the fact that automobiles are in such common use that such stops are now more frequently required than ever before in the history of transportation. On this phase of the case, also, the court did not err in refusing to direct a judgment notwithstanding the verdict or in holding that the verdict of the jury was not against the weight of the evidence.

The defendant also raises certain questions with reference to the propriety of the court's rulings concerning (1) introduction of evidence, and (2) the giving and refusing of instructions.

■ The principal complaint made by the defendant with reference to the court's rulings on evidence

470

is based upon the following circumstances. Prior to the trial the defendant submitted to the plaintiff certain interrogatories, answers to which were returned prepared and signed by the attorney for the plaintiff. One of the interrogatories required the plaintiff to list the names of her treating physicians for this occurrence. In the answer the plaintiff listed, among others, Doctors Belgrade, Sternback and Haver. In another interrogatory the plaintiff was required to list her special damages, and in the answer bills in unknown amounts were stated to have been received from Doctors Belgrade, Sternback, Haver and Turner, as well as for hospitalization at Illinois Masonic Hospital and Norwegian American Hospital. Depositions of these doctors were taken, and it was apparent that the only doctor who treated her for injuries resulting from the accident was Doctor Turner. At the trial plaintiff's counsel in his opening statement, and the plaintiff on direct examination, stated that Doctors Belgrade, Sternback and Haver had not treated her for injuries resulting from the accident. Thereupon counsel for the defendant offered in evidence the answers to the interrogatories by plaintiff, which offer was objected to by the plaintiff and the objection was sustained by the court. In this court the defendant urges that the interrogatories and answers thereto should have been admitted either as admissions or for impeachment purposes. We cannot see under what possible theory of law the answers to the interrogatories could be used to impeach the testimony of the plaintiff on the witness stand, which testimony was more favorable to the defendant than the statements made by the plaintiff in the answers to the interrogatories. It is elementary law that the purpose of impeachment is to introduce evidence which contradicts the unfavorable testimony of the witness on the stand and so to permit the jury to determine whether or not the wit-

471

ness was then testifying falsely. The defendant certainly did not want to open up a field of speculation for the consideration of the jury as to whether or not the three mentioned doctors had actually treated the plaintiff for her injuries. The defendant also advances an equally untenable theory on the ground that the answers, where a party is involved, constitute admissions. Admissions are the words or acts of a party opponent offered as evidence against him. An admission is admissible when it contravenes a position which is taken upon the trial by the party to the suit against whom it is leveled. In the instant case the answers to the interrogatories which the defendant sought to introduce were not in accordance with Supreme Court Rule 19–11, which provides that the interrogatories may be served upon an adverse party and that they shall be answered under oath and shall be signed by the person making them. In the instant case the answers to the interrogatories were returned under the name of the attorney for the plaintiff. In the discussion with the court he stated that they were signed by someone in his office. They were not under oath. There was no showing that the plaintiff knew anything about the contents of the answers and in fact, when the attorney for the plaintiff attempted to question her concerning her knowledge of the answers, the court sustained an objection of the defendant. In a discussion with the judge plaintiff's counsel stated that he had made a mistake in naming the doctors and that he had informed the attorney for the defendant before he took the depositions of the named doctors. In his opening statement he also indicated that none of these doctors had treated the plaintiff. The answers to the interrogatories could not have been admitted either as admissions against the plaintiff or as evidence impeaching her testimony on the stand.

■ The defendant also objects to an instruction given by the court over its objections. The complaint

was filed May 17, 1955. The answer was filed July 18, 1955. In the complaint the plaintiff alleged that she was a fare-paying passenger on the train of the defendant and that at the time of the occurrence in question she was in a powder room of the said train. The defendant in its answer denies that the plaintiff was a fare-paying passenger or that she was in a powder room of the train. The trial was commenced March 6, 1962. The plaintiff offered an instruction setting out the issues in the case, and in that instruction stated that the defendant had denied that the plaintiff was a fare-paying passenger on the train or that she was in the powder room thereof. This instruction was objected to by the defendant on the ground that defendant had admitted in its opening statement that the plaintiff was a passenger and was in a powder room and that this admission in its opening statement was in effect an amendment of the pleadings.

The Practice Act now in force in this State was first passed in 1933. Among other things it abolished the defense of the general issue and provided that the answer should contain explicit admissions or denials of each allegation of the pleading to which it relates. The theory underlying that Act was that the courts would get away from some of the fictions which prevailed under the common law system. The theory was that there should be no general denial because the trial could be simplified if there was an open and frank admission of matters which were not in dispute. It seems impossible to believe that at the time when the pleading was filed the defendant did not have in its possession full knowledge as to whether or not the plaintiff was a passenger on the train. If it had such knowledge, it should have admitted the plaintiff's allegation. If, on the other hand, it was in doubt as to whether or not she was a passenger, it should have pleaded under section 40 of the Practice Act, in order

to prevent an admission, that the defendant did not have sufficient knowledge to form a belief, and in support thereof an affidavit to that effect should have been attached to the pleading. It would seem to us that the defendant could not object to the plaintiff's taking upon herself by her instruction a greater burden of proof than she would have had if she had considered the opening statement to have been an amendment of the pleading. Nor can the defendant urge as error the giving of an instruction which was caused by its improper pleading in the first instance. 2 ILP Appeal and Error, § 672.

The defendant further objects to the instruction on the ground that it contained seven allegations of negligence which were alleged by the plaintiff in her complaint, and that some of those seven were not supported by the evidence. A careful reading of the evidence does not support that point. The court did not err in giving this instruction.

█ The defendant also objects to an instruction given on behalf of the plaintiff with reference to the speed of the train, in which it is stated that the speed must be consistent with the exercise of the highest degree of care which could have been used in the practical operation of its business as a common carrier by railroad. Considering our analysis of the evidence of the engineer and fireman we do not think that the giving of this instruction was error.

█ The court also gave an instruction, over objection, with reference to failure of the party to produce a witness. Just what the purpose of this instruction is is not entirely clear. Defendant argues that it was because of the failure of the defendant to call two doctors who had treated the plaintiff for ailments not arising out of the injury and for failure to call its claim agent, Hendricks. The plaintiff argues that Hendricks had been mentioned several times during

the cross-examination of the witness with reference to a statement which had been signed by the plaintiff for Hendricks as a representative of the defendant. The statement was not admitted in evidence. We do not think that under the circumstances the giving of this instruction was proper. Nor do we think it is reversible error. Hildebrand v. Baltimore & O. R. Co., 41 Ill App2d 217, 227, 190 NE2d 630, 634–5.

■ The defendant also objects to the plaintiff's instruction as to the future damages arising on account of the accident. Instruction No. 5 is the ordinary approved instruction which directs the jury, if it finds for the plaintiff, to set the amount of money which will reasonably and fairly compensate her for elements of damages proved by the evidence to have resulted from the negligence of the defendant, among others being the pain and suffering experienced and reasonably certain to be experienced in the future as a result of the injury. Instruction No. 10 was an instruction that if the jury find that the plaintiff was entitled to damages arising in the future because of injuries, then the amount of such damages must be determined, and it calls attention to a table of mortality concerning the life expectancy of a person the age of plaintiff. Neither in that instruction nor in instruction No. 5 is there any reference to future medical care, which seems to be the objection principally urged in this court by the defendant. The defendant also alleges that there is no evidence in the record which would support any claim for future damages. Plaintiff's physician, Dr. Turner, an orthopedic surgeon, testified that he had examined the plaintiff in the early part of October 1954. The accident occurred September 13, 1954. In his testimony he stated that in his "opinion, within a reasonable degree of medical certainty, there was a causal relationship between the condition of the lower back and the history of injury. The same is true of lordotic curve." He

475

also stated that he had also treated her in 1955 and that he last saw her on March 18, 1955, at which time, since her back was improved and pain was reduced, he recommended she use an infra red lamp at home. He further testified that when he first commenced to treat her the treatments were three times weekly and at the end approximately one a week. He also testified that in March 1955, when he last saw her for treatment, she still had spasm in the back with loss of curvature on x-ray. He also testified that he again saw her on September 26, 1961 and made a complete examination. He stated that at that time she still had spasm of the erector spinae muscles in the lumbar back, that the x-rays still showed lordotic curve and some signs of arthritis which were also present in the first x-rays, that in his opinion the trauma which she had reported might have produced the back spasm and resulted in an aggravation of arthritis of the spine, and that if trauma aggravates an arthritis it will flare up and bring it to a painful, active condition. He also stated that it was his opinion, based upon a reasonable degree of medical certainty, that the plaintiff has a permanent, painful condition in her back and left hip as a result of this accident, and that in his opinion she will require medical treatment from time to time such as "I described" (sic) for her at home. There was no error in giving instructions Nos. 5 and 10.

The defendant objects to the court's refusal to give four instructions offered by it. Instruction No. 15 defined the alleged duty of a motorist approaching a crossing. Instruction No. 16 advised the jury of the engineer's duty to a motorist approaching a crossing. The defendant also objected to the failure of the court to give instructions Nos. 17 and 18. Instruction 17 was an instruction to the effect that "the mere fact of the happening of the occurrence is not of itself evidence of negligence on the part of the defendant. Before plain-

tiff can recover, she must prove that the defendant was negligent in one or more of the respects charged by her, that such negligence proximately caused the injuries suffered in the occurrence and that the plaintiff was in the exercise of ordinary care for her own safety immediately before and at the time of the occurrence." Instruction No. 18 has not been approved by the committee formulating the Illinois Pattern Jury Instructions. Instruction No. 18 stated that if the jury believed "that plaintiff was injured as a result of a mere accident which occurred without the fault either of the plaintiff or of the defendant," then the plaintiff cannot recover. Both of those instructions fall within the same group. They are what is commonly referred to as the "mere accident" or "unavoidable accident" instruction. In Illinois Pattern Jury Instructions, § 12.13, the committee recommends that no "unavoidable accident" instruction be given, and cites various cases in support thereof, including Wolpert v. Heidbreder, 21 Ill App2d 486, 158 NE2d 421, and Williams v. Matlin, 328 Ill App 645, 66 NE2d 719. In the latter case the court said that such an instruction "merely tells the jury what should be known to the man on the street. Moreover, in practically every case, as here, the jury is instructed that it should find defendant not guilty unless the plaintiff proves by the preponderance of the evidence, among other things, that the defendant was guilty of negligence proximately and directly causing the injuries complained of." The use of the word "mere" in both of the instructions is also objectionable as overemphasizing the "fact of the happening of the occurrence" or "accident." The court did give the following instruction:

"If you find from your consideration of all the evidence that the defendant was negligent in one of the ways which I have mentioned, as charged

by the plaintiff, and that his negligence was a proximate cause of injury to the plaintiff, and you further find that the action of a third person or an outside agency not a party to the suit also was a proximate cause of injury to the plaintiff, then the acts of the third party or of the outside agency are not a defense to the defendant against the claim of the plaintiff. On the other hand, if you find that the proximate cause of injury to the plaintiff was the negligence of a third party or outside agency, and that negligence of the defendant did not proximately cause or contribute to cause the injury to the plaintiff, then the plaintiff is not entitled to recover from the defendant."

This instruction properly stated the law and covered the material in the refused instructions. In order to find this instruction it was necessary to go to the record. The court did not err in refusing to give instructions Nos. 15, 16, 17 or 18.

Section 67 of the Practice Act provides that an original and one copy of each instruction asked by any party shall be tendered to the court, and when the court gives or refuses any instruction the court shall write on the margin of the original and copy the word "given" or "refused." Section 67 further provides, in paragraph (2), that the original written instructions given by the court to the jury shall be taken by the jury to the jury room and shall be returned by them with their verdict into court. It also provides that the originals and copies of all instructions, whether given, modified or refused, shall be filed as a part of the proceedings in the cause, but on appeal only the copies need be incorporated in the record on appeal. 2 ILP Appeal and Error, § 488, states: "Where error is predicated on the giving of instructions the abstract should set out the instructions in full and disclose at whose instance they were given. . . . all instructions should

478

■

be set forth in the abstract, or it should be made to appear from the record that the instructions abstracted were the only ones on the point." In People v. Harrell, 34 Ill App2d 205, 209, 180 NE2d 889, 891, the court said: "The defendants have abstracted three of the People's tendered instructions without the required notations thereon. No other instruction, given or refused, is abstracted. Under this condition, a court of review does not consider alleged errors in instructions. People v. Gawlick, 350 Ill 359, 363, 183 NE 217; Votrian v. Quick, 271 Ill App 259, 263." In People v. Gawlick, supra, the court stated: "It is also argued that the court erred in instructing the jury. The abstract does not show, or purport to show, all the instructions given and refused. Under this condition of the abstract we will not consider an assignment of error based on giving or refusing instructions. People v. Terracco, 346 Ill 423, 179 NE 114; People v. Ball, 333 Ill 104, 164 NE 138." Under those rules we would be justified in not considering any objections to the instructions. All of the instructions are not abstracted. While the case was pending in this court the defendant moved the court to permit it to file an additional abstract incorporating all the instructions. This motion was refused. The defendant appended to its reply brief all of the instructions given or refused. However, the record has no indication as to whether the instructions therein set out were offered by the plaintiff or the defendant, and we have been unable to find anywhere in the record except in the post-trial motion the refused instructions of which the defendant complains. Nevertheless we have considered the instructions and find no error in the court's rulings thereon.

■ The defendant also objects that the verdict is excessive. The jury awarded the plaintiff damages in the sum of $10,000. A careful reading of the testimony, and particularly the testimony of Doctor Turner which

we have previously set out in this opinion, does not indicate that the verdict is excessive.

The judgment of the Circuit Court of Cook County is affirmed.

Affirmed.

SCHWARTZ, PJ and DEMPSEY, J, concur.