HELEN BROWNE, Plaintiff-Appellant, *v.* CHICAGO TRANSIT AUTHORITY, Defendant-Appellee.

(No. 58815;

First District (4th Division)—April 24, 1974.

Thompson & Thompson, of Chicago (Thomas J. Keevers, of counsel), for appellant.

John J. Devine, John J. O'Toole, and James F. Stack, all of Chicago, for appellee.

Mr. JUSTICE BURMAN delivered the opinion of the court:

Plaintiff, Helen Browne, brought an action to recover damages for injuries she sustained while she was a passenger on a bus operated by the Chicago Transit Authority (C.T.A.). The cause was tried before a jury and a verdict was returned finding for the defendant. Plaintiff appeals from the judgment entered on the verdict.

The contentions raised by plaintiff on appeal are that (1) the verdict exonerating the C.T.A. from liability is against the manifest weight of the evidence and should be set aside, and that (2) the court erred in denying plaintiff's motion for a mistrial when the defense counsel injected racial prejudice into the case, (3) in instructing the jury, and (4) in failing to declare a mistrial when the jury affirmatively indicated to him that they were considering matters outside of the issues in the case.

The undisputed evidence discloses that on Friday, September 20, 1968, at about 6 o'clock in the evening, plaintiff boarded an Archer Avenue bus operated by the C.T.A., paid her fare, and took a seat. At about 6:25 P.M. the bus was proceeding in a southwesterly direction on Archer Avenue near Damen Avenue. The plaintiff rose from her seat and walked toward the front of the bus to get off. As she did so the bus made a sudden stop and she fell to the floor, sustaining injuries.

At the close of the evidence, the trial judge granted plaintiff's motion for a directed verdict on the issue of contributory negligence. The salient factual issue presented to the jury on the question of defendant's liability, then, was the cause of the sudden stop. The pertinent evidence is contained in the testimony of certain of the occurrence witnesses testifying at trial.

Joseph Stalilionis testified for the plaintiff that he was a passenger on the bus near the front. He stated that as it approached Damen Avenue, it came to a sudden stop and everybody was jostled. He did not see any other vehicle and testified that the bus came to the sudden stop beyond the east pedestrian walk across Archer Avenue. The bus did not, according to him, come to a stop at or near the intersection of Archer and Damen prior to the sudden stop.

Jerome Sujewicz was also called by plaintiff as a witness and testified that he was a passenger on the bus. It was crowded and people were standing. He was seated on the right hand side behind the exit of the bus. As it approached Damen the signal light was green. He did not think that any passengers got off so the bus kept on going. "[A]ll of a

sudden the light changed to red and the bus made a dead stop." Then he saw an automobile that he did not see before "pull out from the front of the bus * * * to make a right hand turn." The car had been going in the same direction as the bus. The bus stopped at the corner on the northeast side of the intersection and in the crosswalk.

Florence Havlik, also a passenger, was called as a witness by the defendant. She testified that the bus came to a normal stop at Damen Avenue. The bus started again and came to a sharp stop and somebody in the aisle fell down. The bus was crowded at the time and people were standing in the aisle. She felt the jerk while she was sitting. Other people were jostled and thrown about the bus. At that time the bus was halfway across Damen. She did not see any car in front of the bus at that point.

Darnell Jones, the operator of the bus, testified that Archer Avenue has two lanes going southwest and two going northeast at the intersection with Damen Avenue. There is a turning lane for north and southbound traffic off of Archer onto Damen. There were traffic signals at the intersection, including left turn signals for cars turning left to proceed north or south on Damen. He said he stopped before Damen Avenue because the light was red. He observed that there were three cars on the opposite side of Damen, facing him, in the turning lane to turn north onto Damen. When these cars had the green arrow to make the turn, two of them went through. The third car did not. "The light changed green for me to go. I proceeded into the intersection and then the car swerved in front of me * * *." He jammed on his brakes to avoid hitting the car. He said that was when the plaintiff fell. He was then in the center of Damen Avenue—in about the middle of the intersection.

On cross-examination he stated that he knew that the three cars intended to make left turns at that point. He recognized that when the green arrow allowing a left turn onto Damen is showing, the signal for through traffic on Archer is red. And when the green arrow goes off, the green light for through traffic on Archer comes on immediately with no yellow, thus giving no warning to the turning driver of the arrow going off. He saw the first two cars make their turns with the arrow. He watched the third car continuously because he knew it was in the left turn lane. The car stopped. He started the bus as soon as the light turned green. The third car then came in front of him and he had to jam on the brakes to avoid hitting it. He had been a driver for a little over 2 months at the time. Other people besides the plaintiff were jostled about and thrown about the interior of the bus because of the

stop. He had a full load of about 70 to 80 passengers, including some standing in the aisle.

■■ The verdict for the defendant will be set aside only if it is against the manifest weight of the evidence. (*Lau v. West Towns Bus Co.*, 16 Ill.2d 442, 451, 158 N.E.2d 63, 68.) In order to so hold we must determine that an opposite conclusion is clearly evident. (*Payne v. Kingsley*, 59 Ill.App.2d 245, 249, 207 N.E.2d 177, 179.) We fully recognize our duty to carefully and thoroughly examine the record to determine this issue.

■■ As we pointed out, the trial court found—and correctly we believe—that under the evidence as a matter of law the plaintiff was in the exercise of ordinary care for her safety. There was thus no issue as to contributory negligence on her part submitted to the jury. The ultimate issue then was the cause of the sudden stop and whether it constituted negligence. We note that negligence here is not a want of ordinary care. Although not an insurer of the absolute safety of a passenger, a common carrier has a duty to exercise the highest degree of care consistent with the practical operation of its conveyances to protect the safety of the passenger. (*Rotheli v. Chicago Transit Authority*, 7 Ill.2d 172, 177, 130 N.E.2d 172, 175.) Furthermore, as recognized in *Tolman v. Wieboldt Stores, Inc.*, 38 Ill.2d 519, 523, 233 N.E.2d 33, 35:

> " 'The happening of an accident to a passenger during the course of his transportation raises a presumption that the carrier has been negligent. The burden of rebutting this presumption rests upon the carrier. * * * Proof that plaintiff was a passenger, that the accident happened, and that the injury was inflicted, imposes upon the carrier the duty to explain or account for the accident, and to prove that it resulted from a cause for which the carrier should not be held responsible. [*New York, Chicago and St. Louis Railroad Co. v. Blumenthal*, 160 Ill. 40, 48-49, 43 N.E. 809, 811.] * * *' "

Only two witnesses testified as to the reason for the sudden stop by the bus. Jerome Sujewicz said he saw "a car pull out from the front of the bus * * * to make a right hand turn," and that it had been going in the same direction as the bus. On cross-examination the witness admitted giving a statement that he was not in a position to see the other vehicle. The driver testified that he stopped the bus for a red light. While it was standing still he noticed three automobiles waiting for a green arrow to make a left turn north onto Damen. He saw two of the cars go through. He started up "as soon as" his light turned green, although acknowledging that the left turn signal would have simultane-

ously gone off at the same time without warning to turning drivers. Although he said the third car had stopped, and that he continuously watched it, his only explanation for the abrupt stop was that "[h]e came in front of me, and to avoid hitting him, I had to jam my brakes."

██ After carefully considering all the evidence, we hold the verdict finding that the driver used the highest degree of care consistent with the practical operation of the bus to be against the manifest weight of the evidence and find that an opposite conclusion is clearly evident, apparent, and undisputable.

██ For the purpose of guiding the trial court in the event the cause is retried we shall dispose of one other question presented. However, we do not deem it requires a detailed discussion. We believe the cross-examination of plaintiff's witness, Joseph Stalilionis, by defense counsel, regarding his reference to the bus driver in the statement he gave to plaintiff's counsel improperly and prejudicially injected racial prejudice into the jury's deliberations. Although bias or prejudice of a witness is material and can generally be shown, it is also recognized that

> "if certain evidential material, having a legitimate probative value, tends nevertheless to produce also, over and above its legitimate effect, an infair prejudice to the opponent, or by virtue of the personality of the witness tends to receive an excessive weight in the minds of the tribunal, there is good ground for excluding such evidence, unless it is indispensable for its legitimate purpose." (VI Wigmore on Evidence § 1864, at 491 (3rd. ed. 1940).)

Here witness Stalilionis' remark regarding defendant's black driver, who was not a party to the litigation, that "All them spooks look alike to me," appearing in a statement taken before trial by plaintiff's attorney's investigator, was not indispensable as impeaching evidence. And we feel, under the circumstances here, its use on cross-examination unfairly prejudiced the plaintiff in the minds of the jurors, two of whom were black.

For the reasons given the judgment must be reversed and the cause remanded for such other and further proceedings as are consistent with the views herein expressed.

Judgment reversed and cause remanded with directions.

ADESKO, P. J., and JOHNSON, J., concur.