# Illinois Official Reports

## Appellate Court

<div style="border:1px solid">

### *Carlson v. Chicago Transit Authority*, 2014 IL App (1st) 122463

</div>

| | |
|---|---|
| Appellate Court Caption | ROLLAND CARLSON and BARBARA CARLSON, Plaintiffs-Appellants, v. CHICAGO TRANSIT AUTHORITY, a Municipal Corporation; and STEVEN MIXON, Individually and as Agent and/or Employee of Chicago Transit Authority, Defendants-Appellees. |
| District & No. | First District, Sixth Division Docket No. 1-12-2463 |
| Filed | May 9, 2014 |
| Held (*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Summary judgment was properly entered for defendant transit authority in an action alleging that the driver of the bus plaintiffs boarded stopped suddenly to avoid a cab that pulled in front of the bus and caused plaintiffs to be thrown to the floor of the bus as they were looking for seats, notwithstanding plaintiffs' contentions that the bus driver was not properly trained, was negligent in failing to control the bus, and was accelerating unsafely from the stop to pick up plaintiffs, since plaintiffs offered no evidence that the driver was operating the bus in an unreasonable or negligent way or that the abrupt braking was the result of his negligence; rather, the sudden stop was due to the actions of the cab suddenly pulling from the curb without warning and cutting in front of the bus. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 10-L-2471; the Hon. Drella C. Savage, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on Appeal

Morici, Figlioli & Associates, of Chicago (James J. Morici, Jr., and Michael G. Miller, of counsel), for appellants.

Karen G. Seimetz, Stephen Wood, and Rachel Kaplan, all of Chicago Transit Authority, of Chicago, for appellees.

Panel

JUSTICE LAMPKIN delivered the judgment of the court, with opinion.
Presiding Justice Rochford and Justice Reyes concurred in the judgment and opinion.

## OPINION

¶ 1    In this personal injury action, plaintiffs Rolland and Barbara Carlson sued defendants, the Chicago Transit Authority (CTA) and Steven Mixon, a CTA employee, for negligence concerning injuries plaintiffs sustained when they were passengers on a CTA bus driven by Mixon. Defendants moved for summary judgment, and the trial court granted that motion.

¶ 2    Plaintiffs appealed, contending summary judgment was precluded by the existence of genuine issues of material fact as to whether the driver was negligent for overreacting to a potential collision and slamming on the brakes in a hard and sudden manner.

¶ 3    We affirm the judgment of the circuit court, which did not err in granting summary judgment in favor of defendants. We hold that there was no evidence establishing any negligent conduct by defendants, there were no genuine issues of material fact, and defendants were entitled to judgment as a matter of law.

## I. BACKGROUND

¶ 5    On the afternoon of December 12, 2009, plaintiffs boarded a CTA bus that was driven by defendant Mixon and was traveling northbound on Michigan Avenue. Plaintiffs paid their fare and were walking in the aisle and looking for two seats together. There were three lanes for northbound traffic, and Mixon drove the bus from the curb and merged into the middle lane. The bus traveled approximately 60 to 80 feet in the middle lane when Mixon immediately applied the brakes after seeing a taxicab cut into the middle lane in front of the bus from the curb lane. As a result of the sudden stop, Mrs. Carlson fell in the aisle onto her back and hit her head on the floor of the bus. She lost consciousness for a few seconds. Mr. Carlson was thrown to the front of the bus. He was unconscious and bleeding from the top of his head and mouth.

¶ 6    Plaintiffs filed a complaint alleging negligence against defendants for: operating the bus in a manner that caused plaintiffs to be thrown to the bus floor; failing to properly train and supervise Mixon in the safe operation of a bus; failing to maintain reasonable control over the bus; and causing the bus to accelerate from a stop when it was not safe to do so.

¶ 7        In their answers, defendants denied the allegations of negligence and asserted the affirmative defense of comparative negligence. Specifically, defendants alleged plaintiffs failed to take proper hold of available railings or hand bars, failed to sit in available seats, and were otherwise careless or negligent.

¶ 8        Defendants moved for summary judgment, arguing that there were no genuine issues of material fact and plaintiffs could not make a *prima facie* case of negligence against defendants. Specifically, defendants argued that plaintiffs could not establish that Mixon failed to exercise due care when operating the bus because another vehicle suddenly cut off the bus in which plaintiffs were standing passengers. In addition to the pleadings and a videotape of the incident, defendants attached to the motion the depositions of defendant Mixon, eyewitnesses Sally Jo Gerard and Marsha Kremer, and plaintiffs Mr. and Mrs. Carlson.

¶ 9        Defendant Mixon testified that he has been licensed and trained to operate the bus since April 2006 and described the conditions of his training and supervision. At the time of the incident, traffic was fairly heavy. The weather was clear, the streets were dry, and the visibility was good. A few seconds after plaintiffs boarded the bus, Mixon closed the doors and slowly proceeded away from the bus stop. He drove northbound on Michigan Avenue and continuously scanned the road for traffic and checked his rear-view mirror to monitor any problems with his passengers. Mixon was very familiar with this Michigan Avenue route. Less than 10 seconds after he pulled away from the bus stop, he merged into the middle lane. Mixon commonly used the middle lane to avoid being stuck in the curb lane behind right-turning vehicles. His bus was two to three car lengths behind the car in front of him, and Mixon was trying to increase that distance. The bus was traveling about 5 to 10 miles per hour, and Mixon was "covering the brake."

¶ 10        Mixon testified that the bus had driven about 60 to 80 feet away from the bus stop when a northbound taxicab in the curb lane suddenly cut into the middle lane, directly in front of the bus. The cab driver did not use his turn signal. Mixon immediately applied the brakes to avoid hitting the cab. Mixon testified that he had enough time and distance to avoid hitting the cab without having to slam on the brakes as hard as possible. The cab accelerated and drove away. The bus came to a complete stop, and Mixon pulled up the parking brake to assess the situation because plaintiffs had fallen in the bus aisle. He contacted "control" and reported the accident. The police arrived at the scene very quickly, and Mixon spoke to the police and distributed courtesy cards to bus passengers so they could document what they had seen. An ambulance was summoned to assist Mr. Carlson.

¶ 11        Sally Jo Gerard testified that she, her neighbor Marsha Kremer, and Gerard's daughter were passengers on the bus at the time of the incident. Gerard and Kremer were seated in the front, right side of the bus. Their seats faced the interior aisle of the bus looking west. The bus was traveling slowly while it was in the middle lane. Gerard was looking out the front and side windows of the bus and saw a car, which had been stopped in the curb lane, dart into the middle lane in front of the bus. She did not observe anything that led her to think that Mixon was not operating the bus in a safe manner or was not keeping a proper lookout for vehicles. The stop was not violent and caused Gerard only to jerk forward. However, she saw Mr. Carlson come

flying down the aisle past her and then his wife followed. Gerard had "never seen anyone move like that."

¶ 12      Marsha Kremer was seated next to Gerard, on Gerard's right side. Kremer testified that she was looking out the front windshield of the bus so she would not miss her stop. Kremer testified that the bus "was not going fast at all, ten miles an hour" when it was in the middle lane. As the bus was almost even with a cab that was stopped in the curb lane, the cab took off very fast, left the curb lane and cut over into the middle lane in front of the bus. Mixon quickly applied the brakes when the cab changed lanes. Kremer thought that the bus and cab would have collided if Mixon had not applied his brakes in that manner. Although the sudden stop did not cause Gerard to bump into Kremer, Kremer saw Mr. and Mrs. Carlson fly almost horizontally past her line of vision. Mr. Carlson ended up at the very front of the bus lodged against the fare box. He seemed unconscious. Kremer did not observe anything that led her to think that Mixon was not operating the bus in a safe manner or was not keeping a proper lookout for vehicles.

¶ 13      Plaintiff Barbara Carlson testified that, after she and her husband paid their fares, they proceeded down the aisle toward the empty seats at the rear of the bus. The bus was in motion, but she was able to maintain her balance and hold onto hand bars as she walked down the aisle. Prior to her fall, she never looked back at Mixon or out the side windows of the bus. Mrs. Carlson testified that the driver took off fast and then slammed on the brakes. She "got slammed down" to the floor, and her head hit the floor. She was confused when she regained consciousness. She saw her husband lying unconscious at the front of the bus and yelled at Mixon for slamming on his brakes. She told a paramedic at the scene that "the bus driver slammed on his brakes and we went flying and were both knocked unconscious."

¶ 14      Plaintiff Rolland Carlson testified that Mixon "took off fast" after the Carlsons paid their bus fare. Mr. Carlson said that he had walked about two-thirds of the way to the back of the bus when he suddenly was pushed or thrust to the back of the bus.

¶ 15      The video footage of the incident, which contained a time stamp, showed: the bus's slow start-up after the plaintiffs boarded the bus; the plaintiffs walking in the aisle toward the back of the bus; a car suddenly cutting in front of the bus from the curb lane; the effects on the seated passengers–who were not jostled out of their seats–and other standing passengers–who did not fall–of Mixon applying his brakes; and plaintiffs falling to the floor. The video established that at least 5 to 10 seconds passed between the time the bus entered the middle lane and the time Mixon applied the brakes.

¶ 16      In response to the summary judgment motion, plaintiffs argued that genuine issues of material fact existed concerning whether Mixon was properly trained and negligently operated the bus.

¶ 17      The trial court, which viewed the video footage of the incident and reviewed the evidentiary material, granted summary judgment in favor of defendants. Citing *Malone v. Chicago Transit Authority*, 76 Ill. App. 2d 451 (1966), the trial court found no evidence in the record to establish negligence on the part of defendants.

¶ 18    Plaintiffs moved the trial court to reconsider its ruling, arguing the court erroneously applied the existing law. Plaintiffs argued the court should have followed *Browne v. Chicago Transit Authority*, 19 Ill. App. 3d 914, 917 (1974), which requires common carriers to exercise the highest degree of care consistent with the practical operation of its conveyances to protect the safety of the passengers. Plaintiffs argued that based on the extreme movement of the plaintiffs within the bus upon the application of the brakes, it could be inferred that the application of the brakes by Mixon was extremely hard and sudden, and there was a question of fact as to whether such an application of the brakes was necessary and warranted under the circumstances.

¶ 19    Thereafter, the trial court denied plaintiffs' motion to reconsider the summary judgment ruling. The trial court explained that it had applied to defendants the heightened duty to exercise the highest degree of care consistent with the practical operation of the bus to protect the safety of the passengers. The court stated that although plaintiffs' injuries had raised a rebuttable presumption of negligence, the evidence explained why Mixon had to suddenly apply the brakes and established that the accident resulted from a cause for which defendants should not be held responsible. Plaintiffs timely appealed.

¶ 20                                    II. ANALYSIS

¶ 21    Section 2-1005 of the Code of Civil Procedure (Code) (735 ILCS 5/2-1005 (West 2010)) provides for summary judgment when the pleadings, depositions, and admissions on file, together with any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Steadfast Insurance Co. v. Caremark Rx, Inc.*, 359 Ill. App. 3d 749, 755 (2005). All evidence must be construed in the light most favorable to the nonmoving party and strictly against the moving party. *Pearson v. DaimlerChrysler Corp.*, 349 Ill. App. 3d 688, 697 (2004). We review a trial court's entry of summary judgment *de novo*. *Ragan v. Columbia Mutual Insurance Co.*, 183 Ill. 2d 342, 349 (1998).

¶ 22    "Summary judgment is a drastic measure and should only be granted if the movant's right to judgment is clear and free from doubt." *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102 (1992). A defendant moving for summary judgment bears the initial burden of proof and may meet this burden either by affirmatively showing that some element of the case must be resolved in his favor or by establishing " 'that there is an absence of evidence to support the nonmoving party's case.' " *Nedzvekas v. Fung*, 374 Ill. App. 3d 618, 624 (2007) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)).

¶ 23    Although the plaintiff need not prove his case at the summary judgment stage, he must present sufficient evidence to create a genuine issue of material fact. *Wiedenbeck v. Searle*, 385 Ill. App. 3d 289, 292 (2008). "Mere speculation, conjecture, or guess is insufficient to withstand summary judgment." *Sorce v. Naperville Jeep Eagle, Inc.*, 309 Ill. App. 3d 313, 328 (1999). The court determines the existence or absence of a genuine issue as to any material fact from the affidavits, depositions, admissions, exhibits and pleadings in the case. *Carruthers v. B.C. Christopher & Co.*, 57 Ill. 2d 376, 380 (1974).

"The facts to be considered by the court are evidentiary facts. [Citation.] Even though a complaint and answer may purport to raise issues of material fact, if such issues are not further supported by evidentiary facts through affidavits or such, summary judgment is then appropriate. [Citation.] If the party moving for summary judgment supplies facts which, if not contradicted, would entitle such a party to a judgment as a matter of law, the opposing party cannot rely upon his complaint or answer alone to raise genuine issues of material fact. [Citations.]" *Id.*

¶ 24 In order to establish a claim of negligence against a common carrier, plaintiffs must present sufficient factual evidence to establish the existence of a duty of care owed by defendants to plaintiffs, a breach of that duty, and an injury proximately caused by the breach. *Krywin v. Chicago Transit Authority*, 238 Ill. 2d 215, 225 (2010). Whether a duty exists in a particular case is a question of law for the court to decide (*Marshall v. Burger King Corp.*, 222 Ill. 2d 422, 430 (2006)), and Illinois courts have long held that, although a common carrier is not an insurer of the absolute safety of a passenger, a common carrier has a duty to its passengers to exercise the highest degree of care consistent with the practical operation of its conveyances (*Krywin*, 238 Ill. 2d at 226-27; *New v. Pace Suburban Bus Service*, 398 Ill. App. 3d 371, 382 (2010); *Browne v. Chicago Transit Authority*, 19 Ill. App. 3d 914, 917 (1974)). See also *Smith v. Chicago Limousine Service, Inc.*, 109 Ill. App. 3d 755, 759 (1982) (a common carrier "cannot be an absolute insurer of the safety of its passengers [citation], and it is not responsible for personal injuries sustained by them in the absence of some unjustifiable act of commission or omission"). Although a common carrier's degree of care is not capable of a precise formulation, and its application will depend upon the factual situation in each case, "[i]t has been said that the obligation of a common carrier is to do all that human care, vigilance and foresight could reasonably do, consistent with the mode of conveyance and the practical operation of the road, to convey its passengers in safety to their destination." *McNealy v. Illinois Central R.R. Co.*, 43 Ill. App. 2d 460, 465 (1963).

¶ 25 "The happening of an accident to a passenger during the course of his transportation raises a presumption that the carrier has been negligent." (Internal quotation marks omitted.) *Browne*, 19 Ill. App. 3d at 917. The carrier, however, may rebut that presumption by explaining or accounting for the accident and proving that it resulted from a cause for which the carrier should not be held responsible. *Id.*

¶ 26 Whether a defendant breached the applicable duty of care and whether the breach was the proximate cause of the plaintiff's injuries are ordinarily questions of fact for the jury. *Id.* Nevertheless, factual questions become questions of law when there can be no difference in the judgment of reasonable men on inferences to be drawn from undisputed facts. See *Olson v. Williams All Seasons Co.*, 2012 IL App (2d) 110818.

¶ 27 On appeal, plaintiffs argue that the trial court erred in granting summary judgment because there was ample evidence in the record to support the proposition that Mixon was negligent in the operation of the bus for slamming on his brakes so hard as to cause plaintiffs to be thrown down the bus aisle in the manner depicted in the videotape and described by eyewitnesses Gerard and Kremer, defendant Mixon, and plaintiff Mrs. Carlson. Plaintiffs contend that, given the presumption of negligence and the highest degree of care owed to plaintiffs, there is clearly

- 6 -

a genuine issue of material fact regarding whether defendants were negligent. Plaintiffs argue that the question of whether Mixon was negligent by overreacting to a vehicle darting into his lane and by applying the bus's brakes in such a hard and sudden manner is a question of fact for a jury and should not have been decided as a matter of law.

¶ 28 First, we consider if a genuine issue of material fact exists concerning whether defendants breached the duty of care of a common carrier toward plaintiffs. Although an accident that results in injuries to passengers aboard a common carrier may raise a presumption that the carrier was negligent, the carrier may present evidence to rebut that presumption. See *Nilsson v. Checker Taxi Co.*, 4 Ill. App. 3d 718, 722 (1972) (the plaintiff, a taxicab passenger, was not entitled to a presumption that the defendant taxicab was negligent because the evidence established that another automobile collided with the taxicab and, thus, the plaintiff's injuries were not caused by an apparatus wholly under the defendant's control); see generally *Malone v. Chicago Transit Authority*, 76 Ill. App. 2d 451, 454-55 (1966) (the plaintiffs failed to make a *prima facie* case against the defendant carrier where the evidence established the plaintiffs were standing in a crowded bus when an automobile made a turn in the middle of the street while the bus driver, who was looking ahead, slammed on his brakes and made no contact with the other vehicle, and there was no testimony as to the speed of the bus). "A carrier is liable to its passenger only for injuries which are caused by its negligence; it is not liable for injuries which result from a cause beyond its control." *Nilsson*, 4 Ill. App. 3d at 722. Here, the evidence established that plaintiffs were injured by a near collision between two vehicles, one controlled by a person other than defendants.

¶ 29 Under these circumstances, defendants would be liable to plaintiffs only if defendants were negligent. However, after considering the pleadings, depositions, and videotape in the light most favorable to plaintiffs, we conclude that no genuine issue of material fact exists because no evidence supports plaintiffs' assertion that defendants breached the duty owed to plaintiffs. The record shows that defendants' conduct satisfied the duty they owed plaintiffs, and summary judgment was properly granted.

¶ 30 Defendants, through deposition testimony and the videotape, have supplied facts that established Mixon did not operate the bus in a negligent manner where the uncontradicted evidentiary facts show he: did not accelerate abruptly or unsafely from the bus stop; drove in the middle lane at a slow speed of about 5 to 10 miles per hour; maintained a distance of at least two car lengths between his bus and vehicle in front of him; and applied his brakes to successfully avoid a collision with the vehicle that suddenly darted into his lane of traffic without a turn signal. Plaintiffs, who cannot rely on their pleadings alone to raise issues of material fact, did not present any other factual evidence to contradict the facts raised in defendants' motion.

¶ 31 Summary judgment is proper if the plaintiff fails to establish an element of the cause of action. *Bagent v. Blessing Care Corp.*, 224 Ill. 2d 154, 163 (2007). Further, "[i]f what is contained in the papers on file would constitute all of the evidence before a court and would be insufficient to go to a jury but would require a court to direct a verdict, summary judgment should be entered." *Pyne v. Witmer*, 129 Ill. 2d 351, 358 (1989). Although plaintiffs did not have to prove their case at the summary judgment stage, they had to show a factual basis to

support the elements of their claim, including that Mixon was negligent in his application of the brakes. Thus, plaintiffs had to present facts, not conclusions. They failed, however, to present evidence to establish the negligent acts they alleged in their complaint to survive summary judgment.

¶ 32    Specifically, plaintiffs alleged in their complaint that Mixon negligently operated the bus, the CTA failed to train and supervise Mixon, Mixon failed to maintain control over the bus, and Mixon accelerated from the bus stop unsafely. After defendants presented evidence that established Mixon's proper training and his safe and reasonable operation and control of the bus, plaintiffs failed to come forth with any evidence to indicate that defendants breached the duty owed or that defendants' alleged negligence caused the need for the sudden stop. Consequently, plaintiffs failed to establish a breach of defendant's duty by an act of negligence, and defendants were entitled to summary judgment in their favor as a matter of law.

¶ 33    Plaintiffs offered no evidence to show that Mixon's driving was in any way unreasonable or negligent or that his alleged negligence necessitated the abrupt braking. To the contrary, all the evidence showed that Mixon acted with the highest degree of care and the only cause of his quick application of the brakes was the negligent action of a driver who suddenly and without warning darted out from a stopped position in the curb lane and cut directly into the bus's path. The plaintiffs were looking toward the rear of the bus when the incident occurred, so they did not observe the traffic conditions, the actions of the darting vehicle and Mixon's reaction. In contrast, the bus's video footage and the testimony of Mixon and the two passenger eyewitnesses established that Mixon's speed, following distance and application of the brakes in response to the cab were proper and do not lead to any inferences of negligence.

¶ 34    The video clearly showed that Mixon pulled away from the bus stop slowly, safely, and without any incident or problem, and the independent witnesses confirmed there was no sudden start-up from the bus stop after the plaintiffs had boarded. The video also showed that Mixon had merged into the middle lane and was proceeding forward slowly in traffic when a car suddenly darted into the bus's path and thereby necessitated the braking. The independent witnesses confirmed that Mixon was driving slowly and had to brake suddenly in order to avoid a collision with the vehicle that cut off the bus.

¶ 35    Mixon was able to react quickly to avoid a collision with the darting car, and reasonable minds could not conclude that immediately braking to avoid an imminent collision with a suddenly darting vehicle was an unreasonable thing to do. Moreover, it is sheer speculation by plaintiffs to suggest they would not have fallen if Mixon could have braked less hard. Plaintiffs provided no evidence that the distance between the bus and the darting vehicle was such that Mixon did not have to apply the brakes as he did to avoid a collision. Further, Mixon testified that he did not apply the brakes as hard as he could have. In addition, other passengers who were standing in the bus aisle at the time of incident did not fall to the floor, and the seated passengers were not jostled out of their seats. Even with all reasonable inferences strictly drawn against defendants, plaintiffs cannot establish that any breach of duty owed by defendants proximately caused plaintiffs' injuries, so defendants are entitled to judgment as a matter of law.

¶ 36     Plaintiffs cite *Browne*, 19 Ill. App. 3d 914, and *McNealy*, 43 Ill. App. 2d 460, to support their assertion that summary judgment was error, but those cases do not assist plaintiffs. In *Browne*, the plaintiff bus passenger was injured when she fell while aboard a bus that suddenly stopped in an intersection to avoid a collision with an oncoming car that was making a left turn in front of the bus. *Browne*, 19 Ill. App. 3d at 915-18. This court reversed the jury's verdict in favor of the defendant because it was against the manifest weight of the evidence. *Id.* at 918. Specifically, this court noted that the bus driver gave inconsistent testimony as to why he stopped the bus suddenly. Although he initially claimed that he was continuously watching the turning car and it was stopped, he also claimed that he had to jam on his brakes and come to an abrupt stop to avoid hitting the turning car because it " 'came in front of [him].' " *Id.* From such testimony, the fact finder could reasonably infer that the driver did not keep a proper lookout or accelerated too quickly into the intersection before the turning car had cleared the intersection. Here, in contrast, all the factual evidence established that Mixon did not act negligently. There was no evidence of defendants' negligence, and any presumption of negligence was fully rebutted when defendants showed that the cause for the sudden braking was the negligence of another car suddenly darting in front of the bus.

¶ 37     In *McNealy*, a train passenger brought a negligence action against the railroad for injuries she sustained while aboard a train that made a sudden stop because a car had stopped on the tracks. *McNealy*, 43 Ill. App. 2d at 462. After a jury trial resulted in a verdict in favor of the plaintiff, the railroad company appealed, arguing that the trial court had erred by either refusing to direct a verdict in its favor or failing to enter a judgment notwithstanding the verdict because there was no evidence showing negligence on its part. The appellate court affirmed the trial court's denial of the railroad company's motion for a judgment notwithstanding the verdict because the evidence indicated a dispute existed as to why the sudden stop was made. *Id.* at 466. Specifically, railroad employees gave conflicting testimony as to where, when and how the brakes were first applied. *Id.* Furthermore, there was evidence that the engineer was conversing with the fireman about an engine problem instead of looking out the front window of the train while a car was approaching the crossing where the train was headed. *Id.* The conflicting testimony and other evidence showed that the engineer's inattention, improper lookout, or failure to appropriately reduce his speed created the need for an emergency stop. Here, in contrast, there was no evidence to indicate that Mixon's driving speed or attention created the need to suddenly apply his brakes. The darting vehicle was not observed heading into the bus's path for any length of time or distance; it was seen stopped in the curb lane until it suddenly cut directly into the bus's path. The evidence established that it was solely that negligent act that necessitated Mixon's hard braking.

¶ 38                                   III. CONCLUSION

¶ 39     For the foregoing reasons, the judgment of the circuit court is affirmed.

¶ 40     Affirmed.