GALENA AND CHICAGO UNION RAILROAD COMPANY, Appellants,
v. LEWIS H. YARWOOD, Appellee.

### APPEAL FROM KANE.

A passenger was taken on the train of the Galena and Chicago Union Railroad
Company, to be transported for a short distance; he was told that the passenger
cars were full, and that he must ride in the baggage car; he commenced play-
ing with his companions; obtruded into the passenger car; when that car
was thrown from the track, he leaped from it, and was injured: — *Held*, that
he could not recover for this injury.

THIS cause was heard before J. G. WILSON, Judge, and a
jury, at February term, 1854, of Kane Circuit Court. Verdict
and judgment for plaintiff below for one thousand dollars.
Motion for new trial overruled.

COLLINS & WILLIAMS, for appellant.

BLACKWELL and BECKWITH, for appellee.

SCATES, J. The question is, Ought a new trial to be granted
to the plaintiffs, on account of the insufficiency of the evidence,
and the instructions given and refused in the trial below? The
action was brought by defendant for injuries received on account
of the carelessness of the plaintiffs and servants, in their busi-
ness as common carriers of passengers. First, as to the law.

The court gave twenty-one instructions for defendant, to all
of which exceptions were taken; but assignment of errors is to
4th to 17th inclusive, and a refusal to give the third of plaintiff's
series. The latter is, "that the defendants (plaintiffs here) as
common carriers of passengers, is not an insurer of personal
safety against all accidents, but is liable only for the want of
such care and diligence as is characteristic of cautious persons;
and if the defendant exercised such care and diligence in the
transportation of the plaintiff, then the plaintiff cannot recover
in this action."

The first part of this instruction would be correct. This is
the rule of the American courts. 2 Kent, Com. 600; Story on
Bailments, § 600; Angell on L. Carriers, §§ 522, 535, 568. In
Ingalls v. Bills, 9 Metc. R. 1, the court give a lengthy examina-
tion to the English authorities to show that they are not to be
understood as going this length of putting them upon the same

liability of common carriers of goods. But, on the other hand, the uniform current of authorities in both England and the United States is uniform as to their liability for slight negligence, and in holding them to the utmost prudence and caution. Stokes v. Saltonstall, 13 Pet. R. 190; Philadelphia and Reading Railroad Co. v. Derby, 14 How. U. S. R. 468; 9 Met. R. 1; Angell on Carriers, § 568; Christie v. Griggs, 2 Camp. R. 79. The latter part of the instruction has adopted, as the true definition of the degree of diligence required, the language of C. J. Savage, in his argument in Camden and Amboy Railroad, &c. v. Burke, 13 Wend. R. 629. The expression was incidentally used in argument without any intention of defining exactly the degree of diligence; and although quoted by Angell on Carriers, § 523, yet it is for the purpose of showing the distinction taken in the case, between the carriers of passengers and carriers of goods, as to the degree of liability. It is too narrow, and does not express the full degree of plaintiffs' liability as common carriers of passengers. The law is well and fully laid down in 13 Pet. R. 190, in relation to stage-coach proprietors. There is no reason for a distinction as to railroads, but the same degree of diligence has been required in numerous decisions; and no more has been exacted in any I have met with. Angell on Carriers, §§ 78, 538, and authorities referred to.

I need not copy the several instructions objected to, which, we think, lay down the law correctly.

The fourth instruction has expressed the rule in relation to the degree of diligence required, stronger than we have met with it in the authorities. They are required to use extraordinary care and diligence, which imposes liability for slight neglect; but this instruction says the "smallest neglect."

We see no particular objection to any of the other instructions, except the 11th and 13th. The others state abstractly correct propositions of law, in connection with particular portions of the evidence.

The 11th and 13th instructions given are: "That the fact that the plaintiff jumped from the cars, while they were in motion, to the ground, and thus sustained the injury complained of, will not deprive him of a right to a recovery against the defendants, if the jury believe, from the evidence, that an accident had occurred; that the cars were off the track, and running at the rate of from three to five miles per hour; and the plaintiff had reasonable grounds to believe, and did believe, that his life or limbs were in danger, and that it was necessary to leap from the cars, in order to avoid the danger which threatened him." "13th. That the fact that the plaintiff was a few minutes pre-

vious to the occurrence of the accident and injury, scuffling and playing in a sportive manner, with others on the cars, will not deprive the plaintiff of his right to recover from the defendants, if the jury believe from the evidence, that the defendants, or their agent, were guilty of any neglect, however slight, whereby the accident and injury occurred, unless the jury further believe that such scuffling and playing contributed to produce the injury." It requires great caution and circumspection in courts, when instructions of this character are asked, to avoid injustice to the opposite party. To state a portion only of the material facts connected with a particular transaction, and omit other material ones, which might put a very different phase upon it, and tell the jury if they believe that such facts are proven and true, then the right is with the party, may, and frequently does, lead the jury to regard the facts so stated as the only important facts in that connection. And it not unfrequently happens that very unimportant if not immaterial facts are selected for this purpose. We so regard the facts set forth in the 13th instruction. Few persons would feel authorized, from reading the instruction, to follow up the acts of defendant here, which really constituted his negligence in the matter, and which that "scuffling and playing contributed to produce" instead of the injury ; and which acts of his, subsequent, rather caused him the injury.

Some portion of the facts should be considered in connection with these two instructions.

The passenger train, on the day of the injury, consisted of a baggage car next the tender, then a second class, and lastly a first class passenger car. The two passenger cars were full, and some left standing. The plaintiff and two others, all young men, offered themselves at Elgin as passengers to Clinton, a few miles distant, and the next station. They were told by the conductor that the passenger cars were full, but they could go in the baggage car. They got into it, — in which there were only two or three others, employees on the train. It was in August, and the weather hot. Soon after the train left Elgin these three passengers, having neither coats, vests, or suspenders on, commenced playing and scuffling, to pull each other's linen out of their breeches. This continued until one ran out of the baggage car through the passenger cars, and one or both the others after him, which was just before the cars were thrown off the track. When thrown off the track the plaintiff below had quit scuffling. He was in the forward end of the hindmost car, but inside of it. When the train reached a portion of the road built with wooden rails, and a ribbon plated with flat bar iron,

Galena and Chicago Union Railroad Company v. Yarwood.

from some cause, possibly a snake head, a piece of the flat iron plating, was torn up by the wheels, and which threw the hind trucks of the second and forward trucks of the first class cars off the rails. The jumping, jerking, and roughness of the motion, created great excitement and commotion. The whistle caused the breaks to be put on. Defendant rushed out at the forward end of the car, and jumped from the platform, by which his leg was broken. The train ran about thirty feet, or the length of the car, after he jumped. The speed on this part of the road was twelve to fifteen miles an hour. Witnesses gave an opinion that the train was moving at the rate of three to five miles at the time plaintiff and two or three others jumped. Much other evidence was given in relation to the manner of building this road, its condition, and the care and diligence of its police, and repairs. This portion was flat bar; road passed over by police between every train; road bed firm and ballasted; and that snake heads were made by breaking of spike heads, and no means of preventing it known; that passage of locomotive may break a spike head, and turn up a snake head under its own train. There is no proof that the alarm whistle was delayed or neglected, or that the brakes were not put on in a reasonable time. No neglect is proven on the plaintiffs' servants on the train, by showing any particular act done or omitted. Nor is there particular proof that any part of this portion of the road was not at that time in good order for this kind of road.

By the law they are bound to the utmost diligence and care, and are liable for slight negligence. Proof that defendant was a passenger, the accident, and the injury, make a *primâ facie* case of negligence. This is done, and the burden of explaining is thrown upon the plaintiffs.

One explanation is, that his negligence in leaping from the car, when there was no danger on it, occasioned his injury. The car was not overturned, nor was any one injured who remained in it. Doubtless, the leaping was the immediate cause of the injury. But this is answered by the circumstances. Such an act the law deems a natural and prudent precaution to extricate a person from peril, under such circumstances, as for the moment present it is the least evil of a perilous alternative. Story on Bailments, § 598; Jones v. Boyce, 1 Stark. R. 493; McKinney v. Niel, 1 McLean, C. C. R. 540; Stokes v. Saltonstall, 13 Pet. R. 181; Ingalls v. Bills, 9 Metc. R. 1; Angell on Carriers, § 547. But a rash and undue apprehension of danger on the passengers' part may not justify the act as without culpability. It is not to be expected that passengers, under such circumstances of apparent peril and excitement, and

frequently of great confusion, can exercise any great degree of calmness and deliberation; nor are we very well qualified to judge for them, upon hearing a relation of the facts. All must be left to a jury. We cannot condemn this act, under these circumstances, by a knowledge of the final issue of it.

Another answer given to the *primâ facie* case is to be found in the fact, that the passenger cars being full, the defendant was received as a passenger into the baggage car. The law requires common carriers of passengers to take and carry every one who desires to go, provided they have room, and there be no objection on account of the condition, habits, character, deportment, or purposes of the passenger. Jencks *v.* Coleman, 2 Sumn. C. C. R. 221; Angell on Carriers, § 524; Story on Bailments, §§ 591 (1), 591 *a.* But at the same time they have the right to prescribe reasonable rules and regulations for the convenience, safety, and comfort of themselves and passengers. Jencks *v.* Coleman, *ubi supra;* Angell on Carriers, § 530.

Herein lies the merits of this case. The passenger cars were full, and plaintiff was so notified. He was received, and took passage for this trip in the baggage car. The contract was for a passage in that car. The carrier would have no right to overload and crowd passengers already in the other cars. When passengers take their seats, they are entitled to occupy as against the carrier and subsequent passengers. While this right is recognized and protected to them, they are required to conduct themselves with propriety, not violating any reasonable regulation of the train; nor have they a right to interfere with the seats and accommodations possessed and secured by other passengers; they are not entitled to make the length and breadth of the train a common possession; nor should they disturb the quiet and convenience of others, or interfere with the management of the train by passing from car to car, unless for reasonable refreshment and other reasonable purposes.

The proofs show in this case that the baggage car was not thrown off the track, nor in any danger. Had the plaintiff below remained in the car in which he engaged his passage, and in which plaintiffs here agreed to receive and take him, the necessity for leaping off would not have arisen, even in the mind of a timid person. But he, with the others taking passage in the same car with him, got into a play and scuffle, which brought on a racing through the other crowded cars; and in one of which plaintiff was brought to that apprehension of imminent peril which induced him to leap from the car. Had he remained in the baggage car he would, doubtless, have been preserved from this injury. This was culpable negligence in

him to put himself into the position, and contrary to the terms upon which he was received as a passenger, which made the leap necessary to escape the peril.

The 11th instruction embodies the facts of the cars being off the track, the rate of speed they were going, and the leap; and then directs the jury to justify the leap, if the other facts presented reasonable grounds of apprehension. All the facts may be so, and yet if he brought this peril on himself alone he might still not be entitled to recover. Notwithstanding this proof was before the jury, this instruction does not leave the conclusion to be drawn open to be varied by it.

The 13th instruction is obnoxious to the same objections. The "scuffling and playing" did not produce the injury. They were mere inducements to the acts that followed, the chase through the cars, the obtrusion upon the rights of the other passengers, and the going into the position of danger. The instructions being predicated upon the facts or part of the facts, should have been so drawn as to allow the jury to arrive at a conclusion upon all the material facts bearing upon the point or question instructed upon.

These companies operate with a powerful and dangerous agent, and must be held to a strict liability for care, skill, caution, and diligence. But at the same time we must expect a proportionate degree of prudent discretion in the travelling public, according to the degree of danger in this mode of conveyance, so that this liability of companies may not be unnecessarily increased.

We think the 11th and 13th instructions should have been modified. Nor are we able at all to arrive at the same conclusion with the jury, upon the facts, taking the defendant's conduct in changing cars into consideration, and which seems to have been excluded by these instructions. The question is a new one here, and for greater satisfaction in settling a precedent, we will send the cause back for another trial.

*Judgment reversed.*