(No. 40259.—

IDA TOLMAN, Appellant, *vs.* WIEBOLDT STORES, INC., Appellee.

*Opinion filed Nov. 30, 1967.—Rehearing denied Jan. 18, 1968.*

DAVID ALSWANG, of Chicago, for appellant.

LORD, BISSELL & BROOK, of Chicago, (RICHARD E. MUELLER, RICHARD C. VALENTINE, and THOMAS W. DEMPSEY, of counsel,) for appellee.

PHILIP H. CORBOY, LEONARD M. RING, and WILLIAM J. HARTE, all of Chicago, for *amicus curiae,* Illinois Trial Lawyers Association.

SIDLEY, AUSTIN, BURGESS & SMITH, OSCAR R. HAMLINK, and CORNELIUS P. CALLAHAN, all of Chicago, (JAMES W. KISSEL and FREDERIC F. BRACE, JR., of counsel,) for other *amici curiae.*

Mr. CHIEF JUSTICE SOLFISBURG delivered the opinion of the court:

The plaintiff, Ida Tolman, brought suit in the circuit court of Cook County against the defendant, Wieboldt Stores, Inc., for injuries allegedly received when the heel of her shoe became caught in an escalator owned and operated by defendant. Plaintiff received judgment for $10,000 after a jury verdict, and defendant's post-trial motions were denied. The appellate court, with one judge dissenting, reversed and entered judgment for defendant. (73 Ill. App. 2d 320.) We have granted leave to appeal.

The incident occurred on November 29, 1960, in a Chicago Loop store owned and operated by defendant. The only occurrence witness was the plaintiff who testified that she got on the escalator in the basement going to the first floor and held the hand rail on the right side. She testified that the treads on the escalator were wooden slats spaced apart between three-quarters and one inch, and the space between the slats was one inch deep. About a quarter

of the way up the heel of her left shoe became caught between the slats. She was unable to dislodge the shoe, and upon nearing the top, she gave her foot a violent shake, her foot slipped out of her shoe and she fell backwards and incurred injuries. She testified that the width of her heel was between a quarter and a half inch.

It further appears from the evidence that no changes had been made in the width or height of the treads on this escalator since at least 1936. Defendant purchased the store from Mandel Brothers on August 18, 1960. Photographs of the escalator in question were introduced in evidence without objection. Plaintiff also introduced, over objection, photographs of other escalators in defendant's store and one in Goldblatt's showing narrowly spaced metal slats. Also introduced, over objection, was a photograph of a new escalator with metal slats which was installed after the occurrence to replace the escalator on which plaintiff was injured. This picture also discloses a large painted sign on the adjacent wall, the visible part of which reads: "NEW ESCALATOR to the Subway Store, SWIFT · SMOOTH · SA___."

Plaintiff also introduced into evidence, over objection, two interrogatories and answers propounded in pretrial discovery. They read as follows:

"Interrogatory No. 1: For a five year period prior to November 29, 1960, and while your assignor, Mandel Bros. or you operated or had control of the escalator specified in the complaint, was anyone injured on said escalator by catching any part of their shoe or tripping on the slats or surface of the treads of said escalator?

"The answer is: This defendant has no actual knowledge of any such circumstances. However, based upon hearsay evidence (sic), the answer to interrogatory No. 1 as it pertains to Mandel Brothers, Inc., the answer is yes. There is no record or information as to any such

occurrences during the period of time this defendant was in possession and control of the involved premises and escalator thereon. No records are available prior to October 1, 1956.

"Interrogatory No. 2: If the answer to the foregoing is yes, state the name or names and address or addresses of the person or persons injured, the approximate date of injury, and the manner in which the injury occurred.

"Answer to Interrogatory No. 2: Based upon hearsay information, the defendant lists the following names, addresses and dates relating to incidents which occurred subsequent to October 1, 1956, and during the period of time that the involved premises and escalator thereon was in possession and control of Mandel Brothers, Inc."

(The names and addresses of eleven women were listed.)

On appeal from the judgment of the trial court, defendant contended that there was no evidence, either that the escalator was unsafe or that defendant knew or should have known that the escalator was unsafe. In the alternative, it urged numerous errors as grounds for a new trial.

The appellate court reversed, holding that there was no evidence of either notice or negligence and that a verdict should have been directed for the defendant. Justice McCormick, dissenting, expressed the opinion that since plaintiff was a passenger on a common carrier, the mere happening of an injurious accident raises a *prima facie* presumption of negligence, requiring defendant to rebut the presumption by showing extraordinary care.

Both parties have proceeded on the assumption that plaintiff was a passenger on a common carrier at the time of her injury. However, plaintiff reasons from this assumption that the accidental injury of such a passenger gives rise to a presumption of negligence, sufficient to establish a *prima facie* case. This view finds support in cases dating back to Lord Mansfield's decision in *Christie* v. *Griggs, 2*

Camp. 79, (1809) 170 Eng. Rpts. 1088. The doctrine was recognized in Illinois in 1854 in *Galena and Chicago Union Railroad Co.* v. *Yarwood,* 15 Ill. 468, 471, where the court stated: "By the law they (the common carrier) are bound to the utmost diligence and care, and are liable for slight negligence. Proof that (plaintiff) was a passenger, the accident, and the injury, made a *prima facie* case of negligence. This is done and the burden of explaining is thrown upon the (defendant)."

In *New York, Chicago and St. Louis Railroad Co.* v. *Blumenthal,* 160 Ill. 40, 48-49, the court said: "The happening of an accident to a passenger during the course of his transportation raises a presumption that the carrier has been negligent. The burden of rebutting this presumption rests upon the carrier. Undoubtedly the law requires the plaintiff to show that the defendant has been negligent. But, where the plaintiff is a passenger, a *prima facie* case of negligence is made out by showing the happening of the accident. If the injury to a passenger is caused by apparatus wholly under the control of the carrier and furnished and applied by it, a presumption of negligence on its part is raised. (*Gleeson* v. *Virginia Midland Railroad Co.,* 140 U.S. 435; *Miller* v. *Ocean Steamship Co.,* 118 N.Y. 199; *Galena and Chicago Union Railroad Co.* v. *Yarwood,* 15 Ill. 468, and 17 *id.* 509; *Chicago City Railway Co.* v. *Engel,* 35 Ill. App. 490; *Pittsburg, Cincinnati and St. Louis Railway Co.* v. *Thompson,* 56 Ill. 141; *Eagle Packet Co.* v. *Defries,* 94 *id.* 598; *North Chicago Street Railway Co.* v. *Cotton,* 140 *id.* 486.) Proof that plaintiff was a passenger, that the accident happened, and that the injury was inflicted, imposes upon the carrier the duty to explain or account for the accident, and to prove that it resulted from a cause for which the carrier should not be held responsible. (*Railway Co.* v. *Engel, supra; Railway Co.* v. *Thompson, supra.*) The circumstances of exculpation are its matter of defense. *Gleeson* v. *Railroad Co., supra.*

"Here, an injury was proven to have happened to a passenger while descending from a train of appellant's cars in the manner and under the circumstances already stated. We think that a *prima facie* case of negligence was made out, sufficient to throw upon appellant the burden of proving that the injury was not its fault. Whether or not the defendant offered such explanation of the accident as to relieve itself from the charge of negligence, and whether or not the plaintiff exercised due care of his own safety, were questions of fact for the jury, and were submitted to them by the court under proper instructions."

Although there is substantial authority for the proposition that an escalator is a common carrier, (see Anno. 66 A.L.R. 2d 496, 499), other courts have refused to distinguish between a person riding an escalator and one using the stairs. (*Stratton* v. *J. J. Newberry Co.*, 117 Conn. 522, 169 Atl. 56; *Fuller* v. *Wurzburg Dry Goods Co.*, 192 Mich. 447, 158 N.W. 1026.) The only Illinois decision dealing with the duty of care owed a person on an escalator is *Heffernan* v. *Mandel Brothers, Inc.*, 297 Ill. App. 272, where the court adopted the view that an escalator, like an elevator, was a common carrier. However, the court reversed a judgment for the plaintiff on the ground that there was insufficient evidence of a violent vibration or jerk of the escalator to sustain a verdict.

We cannot agree that a rule applying to elevators must necessarily apply to escalators. In *Heffernan*, the court explained the rationale of the rule relating to elevators at 297 Ill. App. at 277: "The rule as to the duty one owning and operating an elevator owes to a passenger riding in same, who is injured through some defect in its operating mechanism, is predicated upon the fact that a person riding in an elevator cannot possibly know or show, if such elevator gets out of control, what caused it to do so, while the owner being in sole control of the elevator and the ma-

chinery used in its operation, an inference of negligence on the part of said owner arises out of the circumstances."

It is our opinion that the relationship of a passenger to the conveyance is far different in the case of a train, bus or elevator than in the case of an escalator. The role of a passenger on a train, bus or elevator is a passive one, and ordinarily such a passenger cannot exercise any control over his own safety. However, a person on an escalator may actively participate in the transportation in a manner similar to the use of a stairway, and may contribute to his own safety. A passenger on an escalator, however, is unlike a person on a stairway in that he must deal with a moving mechanism over which he has no control.

It does not serve the logic of the law to attribute to an escalator all the attributes of a common carrier and to ignore the facts and circumstances resulting in the injury to plaintiff.

It is our view that defendant owed plaintiff the same duty owed any other business invitee upon its premises. Defendant had the duty to use reasonable care and caution under all the circumstances to keep the premises reasonably safe for use by the plaintiff. (*Geraghty* v. *Burr Oak Lanes, Inc.,* 5 Ill.2d 153.) However, such a conclusion does not necessarily defeat plaintiff's claim. The question is whether under all the facts and circumstances most favorable to plaintiff there was evidence of negligence in maintaining the escalator which could properly be submitted to the jury. *Pedrick* v. *Peoria and Eastern Railroad Co.,* 37 Ill.2d 494.

Plaintiff alleged specific negligence on the part of defendant in that it "suffered, permitted and allowed the said escalator to be old, outmoded and unsafe in that the surface of the said escalator was equipped with wooden slats which were spaced far enough apart so that the heel of a woman's shoe was likely to be caught between the said slats" and

that the escalator was "not the type used as a matter of custom, practice and usage by retail department stores in the loop district of the City of Chicago * * *." These allegations were denied by defendant. While there is no evidence of a malfunction or breakdown of the escalator, there is evidence that the injury was caused by the ordinary functioning of the apparatus and not by something or some agency unconnected with the escalator. Here there is evidence that plaintiff's injury was caused by the functioning and condition of the escalator with old wooden slats which were spaced further apart and were deeper than the treads used on newer escalators. The jury saw photographs of the old escalator, and we think there was sufficient evidence to permit the jury to conclude that the defendant did not exercise a reasonable degree of care under all the circumstances by maintaining the old escalator with wide-spread wooden slats. This condition was obvious and the defendant cannot deny knowledge of this condition.

We, therefore, conclude that the trial court was correct in denying defendant's motion for directed verdict and for judgment notwithstanding the verdict and the judgment of the appellate court must be reversed. Defendant, however, alleges that other errors would compel the granting of a new trial and we must examine them.

Defendant first contends that prejudicial error occurred by the introduction into evidence of defendant's answers to the interrogatories that we have previously set forth, and by the introduction into evidence of the photograph of a new escalator which replaced the one on which plaintiff was injured.

Answers to interrogatories, like discovery depositions, may be used only for impeachment, or as an admission of a party, or officer or agent of a party in the same manner and to the same extent as any other admission made by that person, or, if otherwise admissible, as an exception to the

hearsay rule. Ill. Rev. Stat. 1959, chap. 110, par. 101.19—11(4) and 101.19—10(2).

It is true that evidence of other occurrences caused by the same agency is competent for some purpose. The question, however, is not whether such proof is competent, but whether the defendant's answers were admissions that it had knowledge of a dangerous condition.

Defendant's answers, filed more than a year after plaintiff's injury, categorically denied any knowledge of prior accidents on the escalator. They did, however, reveal that at some undisclosed time the defendant's investigation revealed "hearsay information" of other incidents while the escalator was under the control of the former owner. From the language of the answers, they are neither admissions of the fact of the prior "incidents," nor of hearsay knowledge of other incidents prior to the injury. As we read the answers they do not tend to show that information of other incidents on the escalator had come to the attention of the defendant prior to this injury, nor that such prior injuries occurred, nor the cause of any which might have occurred.

Armed with the hearsay information given by defendant, plaintiff had ample opportunity to investigate the alleged incidents, and to prove the occurrences, if any. This she did not do, but instead offered the hearsay evidence of defendant. It was error to admit this evidence.

We have also examined the photograph of a replacement escalator and a large sign next to its describing it as: "NEW ESCALATOR * * * SWIFT · SMOOTH · SA__." We consider that this photograph was introduced for the purpose of prejudice as indicated by the emphasis on the sign in plaintiff's attorney's argument to the jury. If the photograph was admissible for any purpose, the portion showing the sign could and should have been deleted. We cannot say that the admission of the answers to the interrogatories and the photograph did not prejudice the defend-

ant. Because of these errors the case must be reversed and remanded for a new trial. Other errors are alleged but they are of a nature that they are unlikely to occur on a new trial and we have not considered them.

We, therefore, conclude that the trial court erred in not granting the defendant's motion for a new trial and that the appellate court erred in entering judgment for the defendant. The judgment is therefore reversed and the cause remanded to the trial court with instructions to grant defendant's motion for a new trial.

*Reversed and remanded, with directions.*