THIRD DIVISION
January 27, 2010

Nos. 1-08-3605 & 1-08-3606 (Cons.)

| | | |
|---|---|---|
| GERALDINE NEW, | ) | Appeal from the Circuit Court of |
| | ) | Cook County, Illinois. |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| PACE SUBURBAN BUS SERVICE, a Division of | ) | |
| Regional Transit Authority, a municipal | ) | |
| corporation, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| _____ | ) | |
| | ) | No. 05 L 2011 |
| GERALDINE NEW, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| PACE SUBURBAN BUS SERVICE, a Division of | ) | |
| Regional Transit Authority, a municipal | ) | |
| corporation, | ) | |
| | ) | Honorable James P. McCarthy, |
| Defendant-Appellee. | ) | Judge Presiding. |

PRESIDING JUSTICE MURPHY delivered the opinion of the court:

These consolidated appeals arise from proceedings under plaintiff Geraldine New's

February 18, 2005, single-count personal injury complaint against defendant Pace Suburban Bus

Service. Plaintiff sought damages for injuries allegedly sustained to her back while she was a

passenger on defendant's bus on March 4, 2004. Plaintiff claimed the bus stopped suddenly

forcing her to fall into a pole and to the ground. She alleged that this caused serious injury to her back requiring extensive treatment. Plaintiff alleged that the sudden stop was due to the negligence and omissions of defendant's bus driver. Following a trial, the jury entered a verdict in favor of defendant on August 1, 2008.

Plaintiff appeals the trial court's denial of her motions for judgment notwithstanding the verdict (*n.o.v.*) and a new trial as well as presenting three issues with respect to the jury instructions given at trial. Defendant appeals the trial court's grant of plaintiff's petition for attorney fees and costs, amounting to approximately $17,000, related to the deposition of defendant's first disclosed medical expert, who "resigned" from the case only after plaintiff expended time and funds on his deposition. For the following reasons, we affirm the rulings of the trial court.

## I.  BACKGROUND

### A.  Discovery, Pretrial Motions and Sanctions

Plaintiff alleged in her complaint that on March 4, 2004, she was a passenger on a bus owned and operated by defendant. The bus was traveling eastbound on West 79th Street in the City of Burbank, Illinois, when the driver braked heavily, causing the bus to come to a sudden, hard stop. As a result, plaintiff fell and sustained personal injuries. Plaintiff alleged that the braking was excessive and caused by the driver's negligence and failure to keep a proper lookout.

During the course of discovery, defendant answered plaintiff's Rule 213 (210 Ill. 2d R. 213) interrogatories with its disclosure of witnesses in January 2007, amending that response on December 11, 2007. In both filings, defendant disclosed Dr. Terry Lichtor, a physician practicing

Nos. 1-08-3605 & 1-08-3606 (Cons.)

at Rush-Presbyterian-St. Luke's Medical Center, as its controlled expert witness regarding damages. Defendant stated that it expected Lichtor to testify that plaintiff's back pain was related to a chronic degenerative condition and not a result of her fall on the bus.

Plaintiff filed a notice of deposition of Lichtor on October 26, 2007, for his deposition on November 27, 2007. In a document rider to the notice, plaintiff requested production of various documents by November 20, 2007, including copies of documents Lichtor relied on in forming his opinion. On November 2, 2007, plaintiff issued a subpoena to Lichtor, requesting federal and state tax returns, all W-2 and 1099 income tax forms, and all computer devices containing his income tax information from 2004 to the date of the subpoena. The deposition was rescheduled and plaintiff filed a renotice of deposition of Lichtor on December 19, 2007, for his deposition on January 17, 2008. The renotice included an amended deposition rider requesting the same documents as well as the tax information.

Lichtor appeared for his deposition on January 17, 2008, having only provided copies of his 1099 forms. When questioned by plaintiff's counsel, Lichtor indicated that he refused to produce any additional tax information. He stated that it was his understanding that plaintiff was only entitled to know what he made from legal consulting and if he was required to produce the tax documents he would resign from the case. After plaintiff's counsel finished questioning Lichtor, and before defense counsel asked any questions, he announced that he was resigning as an expert and ended the deposition.

On January 29, 2008, plaintiff moved to bar Lichtor as an expert based on his failure to disclose his tax documents. Plaintiff also sought attorney fees and costs related to the deposition

3

Nos. 1-08-3605 & 1-08-3606 (Cons.)

under Supreme Court Rule 219(c). 210 Ill. 2d R. 219(c). Based on Lichtor's lack of cooperation with both parties, defendant moved on February 5, 2008, for leave to amend its Rule 213(f) (210 Ill. 2d R. 213(f)) disclosures to remove Dr. Lichtor and to disclose a new expert. The trial court heard argument on the motions on February 14, 2008, and granted both motions with respect to Lichtor. In addition, plaintiff was granted leave to petition for attorney time related to the deposition of Lichtor. The case proceeded to trial on July 28, 2008, and on July 29, 2008, plaintiff presented her petition for attorney fees and costs related to Lichtor's deposition. The court heard argument on the petition following trial.

B. Trial Testimony and Verdict

At trial, plaintiff testified to the events of March 4, 2004, that allegedly caused the injuries at the basis of her complaint. Plaintiff testified that she lived in Burbank, Illinois, and that she does not drive. Plaintiff typically takes the bus, walks or has a family member drive her to places. On the morning of March 4, 2004, plaintiff took a bus operated by defendant to the Chicago Ridge Mall in the Village of Chicago Ridge. Plaintiff shopped and ate lunch at the mall and at approximately 1:30 p.m., she boarded defendant's Route 384 bus. The 384 bus traveled north on South Ridgeland Avenue and South Narragansett Avenue and on to eastbound 79th Street toward plaintiff's stop at West 79th Street and South Laramie Avenue in Burbank, Illinois. Plaintiff walked toward the back of the bus and sat in the aisle seat of the first row of seats on the driver's side that faced the front of the bus.

Plaintiff testified that the weather was misty and the roads also appeared "a little misty, too." Plaintiff sat and looked out the window as the bus traveled in the right-hand lane of the

4

four-lane 79th Street. Plaintiff testified that she felt that the bus started going faster and faster in an unusual manner. Plaintiff did not observe any vehicles in the left lane or any vehicle passing in front of the bus. Though she did not know the speed of the bus and could not see the speedometer or traffic in front of the bus, she felt the driver was going too fast so she decided to get up to pull the buzzer cord. Facing the windows on the left of the bus, plaintiff started to get up to pull the buzzer cord and the bus stopped abruptly. Plaintiff "flew all the way across" the bus and into a pole and then onto the floor. Although there were poles and handle slings nearby, plaintiff, who is five feet tall, stated that she could not reach these aids and reached for the cord without holding anything.

Plaintiff testified that the bus continued on for a while as she lay on the floor. Eventually a passenger on the bus yelled to the bus driver that she was on the floor and the bus driver pulled over. When the bus driver walked up to her to check on her, plaintiff was crying. When he asked if plaintiff was injured, she responded that she was in pain, but told the bus driver that she just wanted to go home. The driver walked back up to the front, then returned to plaintiff and asked if she wanted an ambulance. An ambulance was called and plaintiff was transported to the hospital. At the hospital, X-rays were taken and plaintiff was given pain medication before a member of her family picked her up and took her home in the evening. Plaintiff then testified to her injuries and treatments.

Ryan Schumacher, the passenger who informed the bus driver that plaintiff had fallen, testified next. Schumacher, 25 years old at the time of trial, testified that he also boarded the bus near the Chicago Ridge Mall. He sat in the window seat of the second row of seats behind the

bench seats on the passenger side of the bus. Schumacher testified that the weather was cool with temperatures in the 40s and that it had rained off and on that day, but the pavement did not appear wet.

Schumacher testified that the bus ride was smooth and, prior to the accident, he did not notice any hard braking. The bus appeared to be traveling at a normal and safe speed, though he testified it may have been traveling a tad above the posted speed limit of 35. Because he was daydreaming for most of his ride and given the lapse of time from the date of the accident and his testimony, Schumacher testified that he was unclear on exact details of the bus ride. He could not say whether other cars were passing the bus or in front of the bus at or near the time of the accident. Schumacher testified that he felt the bus brake sharply right before plaintiff fell. He testified that when the bus stopped, his body lunged forward and he hit the seat in front of him. Schumacher testified that plaintiff was sitting at that time and he saw her fall.

The driver of the bus, Thomas Kwidd, testified next. Kwidd, a 57-year-old resident of Burbank, Illinois, at the time of trial, testified that he had been a bus driver for defendant since 1997. Kwidd testified to the extensive 1 1/2-month training program he completed, which included classroom instruction and on-the-job instruction. After sufficient classroom and driving time, if a driver passes tests on each area, he then must pass the commercial drivers license test administered by the Illinois Secretary of State's office.

Kwidd, an instructor in defendant's training program at the time of trial, testified that drivers are taught the duties and responsibilities of a driver to ensure the safety of the passengers and that, as professional drivers, they are held to a higher standard than other drivers. He

explained that drivers are trained to watch for, and be aware, of everything around the bus. Kwidd testified that it is necessary to expect the unexpected, particularly from traffic coming on the left side of the bus. This training was developed to prepare drivers to avoid the need for evasive action in situations that might cause injury to passengers.

Kwidd testified that he had often driven the route he was assigned to on March 4, 2004, and that he was familiar with the roads. He stated that it was cloudy at the time of the incident and that the roads were dry. Kwidd testified that he maintained constant watch on traffic and for any passengers wanting to board or depart the bus. As was normal, vehicles regularly passed the bus in the left passing lane as Kwidd maintained a speed of 30 to 35 miles per hour.

Prior to the incident, Kwidd noticed a vehicle approaching the bus in the left passing lane at a fast speed. Kwidd believed the speed of the approaching vehicle suggested, based on his experience, that there was a 90% chance the driver intended to try to get in front of the bus. In response, Kwidd covered the brake pedal at about the same time the vehicle reached the bus and "cut right in front" of the bus, missing the bus by approximately 18 inches. Kwidd testified that he depressed the brake pedal to back off from the vehicle, but the vehicle then stopped suddenly to turn and Kwidd had to push the brake pedal harder to stop the bus.

Kwidd opined that the pressure applied would be considered a "hard" brake by defendant's standards or "slamming on the brakes" in lay terms. However, Kwidd opined that his action was reasonable and necessary to avoid a collision. Kwidd testified that he then continued on his route. Before traveling too far, a passenger called from the back of the bus that another

7

passenger had fallen and was on the floor of the bus. Kwidd testified that he pulled the bus over and saw plaintiff lying on the floor of the bus. Kwidd called for medical attention at this time.

On cross-examination, Kwidd was confronted with the statement he gave the safety manger at his garage roughly two hours after the incident as well as his testimony from two prior depositions by the parties. For his statement, Kwidd testified that he relayed what happened and what he did to the manager, who put a summary in writing. He stated that he felt the statement looked correct and signed it. Counsel highlighted that his statement differed from his testimony at trial because he said in his statement that he first applied the brake when the vehicle was entirely in the lane in front of him. Additionally, Kwidd stated in his deposition that his first initial brake was hard and the second push was soft as opposed to trial where he stated he pushed hard on the second brake push to bring the vehicle to a stop.

The parties rested and evidence was closed. Defendant moved for directed verdict and the trial court denied that motion. Following closing arguments, the court read the instructions to the jury and the jury returned a judgment in favor of defendant.

### C. Posttrial Motions and Arguments

On August 26, 2008, plaintiff filed a posttrial motion for judgment *n.o.v.* or, in the alternative, for a new trial. Plaintiff argued that the jury verdict was against the manifest weight of the evidence and the trial court erred in instructing the jury. At the hearing on plaintiff's motion, the trial court also heard argument on plaintiff's petition for attorney fees and costs pursuant to the court's pretrial order. The court denied plaintiff's motion for judgment *n.o.v.*, but granted her petition for fees and costs.

The trial court determined that based on Lichtor's extensive experience testifying, he had knowledge as to what he would be required to produce. Further, the court found that defendant was advised that Lichtor had refused to produce this information and would continue to do so. The court also found that defendant had every opportunity to withdraw Lichtor earlier or contact plaintiff before she expended resources preparing for the deposition. The trial court opined that "to make Rule 219(c) a fully meaningful requirement of conduct *** plaintiff is entitled to recovery of fees and costs that could have been prevented by merely a phone call."

These appeals followed. Plaintiff argues that the trial court erred in failing to direct a verdict and denying her motion for judgment *n.o.v.* She also contends that the court erred in instructing the jury. Defendant's appeal involves only the single issue of whether the trial court's grant of attorney fees and costs as a sanction was proper. We first consider plaintiff's arguments before turning to the grant of fees and costs.

## II. ANALYSIS

### A. Plaintiff's Motions for Judgment *N.O.V.* and New Trial

Plaintiff asserts in her first two arguments that the trial court erred in failing to enter judgment *n.o.v.* and for a new trial. Judgment *n.o.v* is proper when, viewing the evidence in a light most favorable to the nonmoving party, it so overwhelmingly favors the movant that there was a total failure or lack of evidence to prove a necessary element. *Razor v. Hyundai Motor America*, 222 Ill. 2d 75, 106 (2006). Factual determinations made at trial will stand unless contrary to the manifest weight of the evidence. *North Avenue Properties, L.L.C. v. Zoning Board of Appeals*, 312 Ill. App. 3d 182, 184 (2000). A reviewing court will not set aside a jury

9

Nos. 1-08-3605 & 1-08-3606 (Cons.)

verdict unless the opposite conclusion is readily apparent or it appears the jury's findings are arbitrary, unreasonable, or unsubstantiated by the evidence. *Johnson v. Chicago Transit Authority*, 248 Ill. App. 3d 91, 94 (1993).

The standard for entry of a judgment *n.o.v.* is high and this court reviews *de novo* a denial of such a motion. *York v. Rush-Presbyterian-St. Luke's Medical Center*, 222 Ill. 2d 147, 178 (2006). Judgment *n.o.v.* will not be granted merely because a verdict is against the manifest weight of the evidence. *Maple v. Gustafson*, 151 Ill. 2d 445, 453 (1992). If a substantial factual dispute is found or the verdict hinges on the jury's credibility determination, denial of a motion for judgment *n.o.v* is proper. *Maple*, 151 Ill. 2d at 454. The evidence must be viewed with all reasonable inferences in favor of the opponent, and we may uphold a decision on any basis appearing in the record. *Arangold Corp. v. Zehnder*, 187 Ill. 2d 341, 359-60 (1999).

In order to reverse the denial of a motion for new trial, this court must find the verdict is contrary to the manifest weight of the evidence and the trial court abused its discretion. *York*, 222 Ill. 2d at 178. This requires a finding that the opposite conclusion is clearly evident or the jury's findings are arbitrary, unreasonable, or not based upon any evidence at trial. *York*, 222 Ill. 2d at 178-79. Again, resolution of conflicts in testimony and credibility determinations are the province of the fact finder at trial. *York*, 222 Ill. 2d at 179.

A common carrier is not an insurer of the absolute safety of its passengers, but it does have the heightened duty to exercise the highest degree of care consistent with the practical operation of its conveyances to protect its passengers. *Browne v. Chicago Transit Authority*, 19 Ill. App. 3d 914, 917 (1974). A rebuttable presumption of negligence is raised against a common

10

Nos. 1-08-3605 & 1-08-3606 (Cons.)

carrier when a plaintiff shows that she was a passenger, an accident happened with an apparatus wholly under the control of the carrier, and that an injury was inflicted. *Tolman v. Wieboldt Stores, Inc.*, 38 Ill. 2d 519, 523 (1967). Once that presumption is raised, the carrier must explain why the accident resulted from a cause for which it should not be held responsible. *Tolman*, 38 Ill. 2d at 523.

For both of these issues, plaintiff contends that the evidence is undisputed such that the jury did not have to weigh different versions of the events that led to defendant's actions causing her to "fly" into a pole on the bus, resulting in serious injuries to her back. She also contends that the jury was not required to assess the credibility of the witnesses. Therefore, plaintiff concludes that, because Kwidd's actions did not comport with the heightened standard of care applicable to common carriers, a contrary verdict is clearly evident and judgment *n.ov.* or a new trial should have been granted.

Plaintiff argues that *Browne* supports her argument. In *Browne*, the court found that, despite the bus driver's testimony regarding a similar sudden stop, the verdict finding the driver exercised the highest degree of care was against the manifest weight of the evidence. *Browne*, 19 Ill. App. 3d at 917-18. Plaintiff asserts that because Kwidd's testimony regarding the weather was contradicted by plaintiff's and Schumacher's testimony and his testimony about the timing of his covering the brake and braking was impeached, *Browne* supports reversal.

We find the trial court properly denied plaintiffs motions for judgment *n.o.v.* and a new trial. Contrary to plaintiff's presentation of the facts and the jury's findings, a contrary verdict is not clear from the evidence at trial. The jury was required to weigh the different versions of the

11

incident presented by plaintiff, Schumacher and Kwidd. Likewise, the jury was required to consider the impeachment of key areas of testimony. Plaintiff herself focuses on the impeachment of Kwidd, but still maintains the jury was not required to weigh the credibility of the witnesses to accept her version of the facts.

Plaintiff's conclusory argument rejects all of this and the jury's finding that Kwidd's version of the incident was credible. The jury considered the testimony regarding the weather, road conditions, the speed of the bus, and the actions of the driver of the vehicle that cut off the bus. Therefore, questions of fact and credibility were determined by the jury and under *Maple* rejection of plaintiff's motion for judgment *n.o.v.* was proper. The evidence accepted by the jury was that the roads were not in poor condition, the bus was traveling within a reasonable rate of speed, the vehicle cut off the bus and then stopped quickly to make a sudden turn, and that this action caused Kwidd to brake hard. Only Kwidd witnessed the actions of the vehicle and could testify to what occurred.

Furthermore, the finding in *Browne* is distinguishable from this case. Unlike this case, in *Browne*, one witness other than the bus driver testified to the reason for the sudden stop. In this case, neither plaintiff nor Schumacher was able to testify regarding the speed of the bus, the actions of the driver that cut off the bus, or when or why Kwidd braked. The jury's finding is based on testimony that it determined to be credible. Viewing all of the evidence in a light most favorable to defendant, it cannot be said the jury verdict is so arbitrary or unreasonable that only an opposite conclusion is evident or that the trial court abused its discretion in denying plaintiff's motion for a new trial.

Nos. 1-08-3605 & 1-08-3606 (Cons.)

### B. Jury Instructions

Plaintiff raises three arguments asserting that the trial court erred in instructing the jury. "In determining whether jury instructions were inadequate, this court will remand for a new trial only if the trial court clearly abused its discretion and prejudice to a party's right to a fair trial has been shown from the failure to give an instruction." *Yoder v. Ferguson*, 381 Ill. App. 3d 353, 381 (2008). Likewise, the trial court's determination as to what issues are raised by the evidence will be disturbed only if the court abused its discretion. *Bryant v. LaGrange Memorial Hospital*, 345 Ill. App. 3d 565, 573 (2003). A trial court will be reversed based on giving an improper instruction only if it clearly misled the jury and resulted in prejudice to the appellant. *Schultz v. Northeast Illinois Regional Commuter R.R. Corp.*, 201 Ill. 2d 260, 273-74 (2002).

### 1. Giving IPI Civil (2000) No. 70.01 in a Common Carrier Case

Plaintiff's first argument that the trial court erred in instructing the jury involves the decision to accept defendant's request to use Illinois Pattern Jury Instructions, Civil, No. 70.01 (2000) (hereinafter IPI Civil (2000) No. 70.01). This instruction informs the jury of the duty of every driver to exercise ordinary care. Plaintiff asserts that the trial court's use of a modified form of this instruction confused the jury with respect to the common carrier's duty of the highest degree of care consistent with that mode of transportation as given in IPI Civil (2000) No. 100.01. These instructions were given one after the other by the trial court, with the common carrier instruction first:

> "At the time of the occurrence in question, the Defendant, Pace, was a
>
> common carrier. A common carrier is not a guarantor of its passengers' safety,

13

but it has a duty to its passengers to use the highest degree of care consistent with the mode of conveying to you the practical operation of its business as a common carrier by bus. It's failure to fulfill this duty is negligence.

It is the duty of every driver of a vehicle using a public highway to exercise ordinary care at all times to avoid a collision."

Plaintiff contends that this instruction confused the jury as to what standard to apply to defendant's actions. She argues that this was compounded when defense counsel asserted during closing that the trial court would tell the jury that the law requires all drivers to exercise ordinary care to avoid a collision and arguing that Kwidd operated his bus in a reasonably safe manner and that he exercised ordinary care when slamming on the brakes to avoid a collision.

Defendant argues that both instructions were necessary to fully and accurately instruct the jury of all of defendant's duties in this case. Defendant highlights the discussion during the instruction conference where the court opined that both instructions were necessary for the jury to understand both Kwidd's duty to other drivers as well as his duty to his passengers. Defendant notes that plaintiff's counsel clarified this by saying that IPI Civil (2000) No. 70.01 applied to driving while IPI Civil (2000) No. 100.01 applied to passengers and did not object when the trial court affirmed that interpretation. Furthermore, defendant notes that no objection was made by plaintiff to the comments during closing argument regarding the standard of care and the issue was not raised in her motion for a new trial.

We do not find that the use of both of these instructions clearly misled the jury leading to prejudice to plaintiff's case. The common carrier instruction was made specifically applicable to

14

defendant and the jury was informed that if it did not exercise the highest degree of care to its passengers it should be found negligent. The second general instruction properly instructed the jury as to the general duty of all drivers on the road. As defendant argues, it appears from the record that at trial both parties recognized the consistency of the instructions and that one standard applied to the passengers and the other to driving generally. The instructions were clear in placing the higher standard of care and duty specifically on defendant and that failure to meet that duty constituted negligence, and the trial court did not abuse its discretion in giving both instructions.

2. The Sole Proximate Cause Instruction of IPI Civil (2000) No. 12.04 (Long Form)

The second issue regarding jury instructions is the trial court's use of the long form of IPI Civil (2000) No. 12.04. Plaintiff asserts that the trial court erred in giving the jury the long form instead of giving the short form as she had requested. IPI Civil (2000) No. 12.04 reads in full:

"More than one person may be to blame for causing an injury. If you decide that a [the] defendant[s] was [were] negligent and that his [their] negligence was a proximate cause of injury to the plaintiff, it is not a defense that some third person who is not a party to the suit may also have been to blame.

[However, if you decide that the sole proximate cause of injury to the plaintiff was the conduct of some person other than the defendant, then your verdict should be for the defendant.]"

The notes for this instruction indicate that the second paragraph should be used only where there is evidence tending to show the sole proximate cause of the occurrence was a third

person.  IPI Civil (2000) No. 12.04, Notes on Use, at 57.  Plaintiff argues that the long form of the instruction was prejudicial because it allowed the jury to absolve defendant from its obligation to provide the highest degree of care demanded of a common carrier.  Plaintiff asserts that there was no evidence that the vehicle was a cause of the injury, much less the sole proximate cause.  She argues that the testimony that the weather was poor, there existed a likelihood an oncoming vehicle would pass and cut in front of the bus, and defendant trained its drivers that these factors all required reduced speed and sooner braking, only support a finding that defendant was the sole proximate cause.  Accordingly, she concludes that it was error to tender the sole proximate cause instruction.  *Graves v. Wornson*, 56 Ill. App. 3d 873, 879-80 (1978).

We disagree.  As stated above, defendant reiterates that a trial court does not abuse its discretion in instructing the jury if an instruction correctly states the law and is supported by some evidence.  Plaintiff's reliance on *Graves* is unavailing.  In *Graves*, the defendants argued that the sole proximate cause of an accident was an oncoming truck that created an emergency situation by attempting to pass vehicles when it had insufficient space to do so.  The Third District of this court reversed the judgment of the trial court for the defendants, finding the use of the long form of the instruction was not supported by the record.  The court opined that the record indicated that the passing truck was able to safely return to its own lane of travel before the defendants reached it and no emergency situation was created.  Therefore, it found there was no sole proximate cause of injury and it was reversible error to instruct the jury regarding sole proximate cause.  *Graves*, 56 Ill. App. 3d at 879-80.

Nos. 1-08-3605 & 1-08-3606 (Cons.)

We find that there was sufficient evidence presented to instruct the jury with the long form of IPI Civil (2000) No. 12.04. Again, Kwidd testified that the vehicle approached in the left lane and he deemed it likely that it would try and cut in front of the bus to the right lane. Kwidd testified that he covered the brake, the vehicle narrowly missed hitting the bus when it cut in front, when the vehicle got in the right lane it stopped suddenly to make a sharp right turn, and Kwidd was forced to brake harder. Unlike in *Graves*, there was no evidence that the third party safely returned to its lane of travel and it could not be the sole proximate cause. The jury was charged with determining Kwidd's credibility and applying the proper weight to that to determine whether the driver of the third vehicle was the sole proximate cause.

### 3. Contributory Negligence Instruction

Plaintiff's final argument on appeal involves the trial court's use of the contributory negligence instruction. Plaintiff argues that the evidence at trial conclusively demonstrated that she was not guilty of contributory negligence and it was prejudicial error to give such an instruction. Plaintiff argues that *Browne* is on point on this issue and requires a finding that the trial court erred.

First, we note that plaintiff provides only a general citation to *Browne* without any pin cite to that court's discussion of this issue. Furthermore, plaintiff does not provide any analysis of the *Browne* court's treatment of contributory negligence. This court is not a repository where the burden of argument and research may be dumped and we will not scour the record to develop argument for a party. See *Collins v. Mid-America Bag Co.*, 179 Ill. App. 3d 792, 794 (1989). While we do not find that plaintiff has forfeited this issue, we do find that *Browne* does not

17

support plaintiff's argument and find that the trial court did not abuse its discretion in tendering this instruction.

As defendant argues, *Browne* is distinguishable from this case and, more importantly, does not hold that a plaintiff cannot be found guilty of contributory negligence in a common carrier case. In *Browne*, the court stated that there was no issue of contributory negligence submitted to the jury because the trial court found that the plaintiff was in the exercise of ordinary care for her safety and the only issue was whether the defendant was negligent. *Browne*, 19 Ill. App. 3d at 917. At best, the court's treatment of this issue was *dicta* and not authority to support plaintiff's argument. Even if *Browne* stood for this proposition, the facts of the case are distinguishable because, as the trial court noted in accepting this instruction, there was conflicting testimony whether plaintiff was standing at the time of the accident and whether she exercised ordinary care in failing to reach for any pole or handle when standing up. Accordingly, the trial court did not abuse its discretion in giving this instruction.

### C. Rule 219 Sanctions

Finally, defendant appeals the trial court's grant of Rule 219 sanctions. The purpose of granting sanctions is not to punish a party, but to effectuate the goals of discovery. *Adams v. Bath & Body Works, Inc.*, 358 Ill. App. 3d 387, 395 (2005). The trial court is clearly in the best position to determine how to apply court rules and rules of procedure in particular cases. *In re Marriage of Baumgartner*, 384 Ill. App. 3d 39, 64 (2008). Penalties ranging from a reasonable attorney fee to monetary penalties may be imposed even if the omissions are inadvertent. *Gonzalez v. Nissan North America, Inc.*, 369 Ill. App. 3d 460, 464 (2006). Therefore, we grant

18

great deference to the trial court in determining whether there was a clear abuse of its discretion in fashioning a sanction. *Ashford v. Ziemann*, 99 Ill. 2d 353, 368 (1984).

Rule 219(c) provides, in pertinent part:

"If a party, or any person at the instance of or in collusion with a party, unreasonably fails to comply with any provision of part E of article II of the rules of this court (Discovery, Requests for Admission, and Pretrial Procedure) or fails to comply with any order entered under these rules, the court, on motion, may enter, in addition to remedies elsewhere specifically provided, such orders as are just, including, among others, the following:

\*\*\*

(ii) That the offending party be debarred from filing any other pleading relating to any issue to which the refusal or failure relates;

(iii) That the offending party be debarred from maintaining any particular claim, counterclaim, third-party complaint, or defense relating to that issue;

(iv) That a witness be barred from testifying concerning that issue;

(v) That, as to claims or defenses asserted in any pleading to which that issue is material, a judgment by default be entered against the offending party or that the offending party's action be dismissed with or without prejudice;

\* \* \*

In lieu of or in addition to the foregoing, the court, upon motion or upon its own initiative, may impose upon the offending party or his or her attorney, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of reasonable expenses incurred as a result of the misconduct, including a reasonable attorney fee, and when the misconduct is wilful, a monetary penalty. When appropriate, the court may, by contempt proceedings, compel obedience by any party or person to any subpoena issued or order entered under these rules. Notwithstanding the entry of a judgment or an order of dismissal, whether voluntary or involuntary, the trial court shall retain jurisdiction to enforce, on its own motion or on the motion of any party, any order imposing monetary sanctions, including such orders as may be entered on motions which were pending hereunder prior to the filing of a notice or motion seeking a judgment or order of dismissal.

Where a sanction is imposed under this paragraph (c), the judge shall set forth with specificity the reasons and basis of any sanction so imposed either in the judgment order itself or in a separate written order." 210 Ill. 2d R. 219(c).

As noted above, after Lichtor refused to produce his tax documents and "resigned" as a witness, plaintiff successfully moved to bar his testimony and for sanctions. The trial court granted plaintiff leave to file a petition for attorney time and costs related to Lichtor's deposition.

At trial, plaintiff filed her petition for attorney fees and costs pursuant to Rule 219(c), which the trial court granted, with slight modification of attorney fees, during posttrial proceedings.

Defendant highlights the line of cases that emphasizes that sanctions under Rule 219 are not pecuniary, but are to be designed to effectuate discovery. See *Adams*, 358 Ill. App. 3d at 395; *Cirrincione v. Westminster Gardens Ltd. Partnership*, 352 Ill. App. 3d 755 (2004). Defendant notes that these cases provide that sanctions must also be just and proportionate to the offense or they are subject to reversal. Defendant maintains that the trial court granted sanctions only after trial was completed and that this can only be viewed as "purely punitive" as it requires defendant to pay a significant penalty to plaintiff, despite the jury verdict in its favor. Despite this argument, defendant notes that the trial court appropriately acted in response by barring Lichtor's testimony - in the same order it granted plaintiff leave to file a petition for costs and fees.

Defendant asserts that its actions that gave rise to the sanction order were reasonable and do not warrant sanction. Defendant admits that it began having problems securing documents and communicating with Lichtor before the deposition. However, it argues that these issues did not lead it to believe that he would resign. Lichtor refused to cooperate with both parties and both parties acted immediately in response to bar Lichtor.

Defendant notes that plaintiff shares in the responsibility for this as she also had a duty to communicate. Plaintiff did not communicate her concern over the missing documents and did not present the issue to the court that the document subpoena had not been complied with. Defendant maintains that the instant sanctions do not serve to improve discovery when the action

was already completed but are unfairly one-sided as plaintiff also failed her duty to assure discovery ran efficiently.

Plaintiff responds that the trial court clearly stated its findings and reasoning for sanctions during the pretrial and posttrial hearings. The court found that it was evident that Lichtor would not be producing the required documents and that this was told to defendant. The court determined that only barring Lichtor's testimony did not stay "within the spirit nor the intention of [Rule] 219(c)." Plaintiff notes that because the trial court held that Lichtor could easily have been withdrawn and saved plaintiff's time and resources, in order to make Rule 219(c) meaningful, plaintiff was entitled to fees and costs. She argues that the scope of the rule is broad and by its plain language vests discretion to the trial court to fashion the best remedy for each situation. She maintains that the trial court correctly determined that barring Lichtor would not promote discovery and was not a sanction as defendant itself sought that remedy.

We first note that defendant's argument that plaintiff could have communicated better does not fall on deaf ears. We agree that both parties must be proactive and openly communicate in order to effectuate open and efficient discovery. However, based on the record we do not find that the trial court abused its discretion in imposing the sanction of attorney fees and costs related to Lichtor's deposition.

First, defendant's arguments that this was purely a posttrial issue and that a proper sanction--barring Licthor--was imposed completely ignores the record. Plaintiff's motion to bar Lichtor and for sanctions, and the trial court's order granting the motions, were filed and entered during pretrial proceedings. The posttrial action was simply the trial court's consideration of

22

plaintiff's petition for attorney fees and costs that presented her accounting of time and costs preparing for the deposition. Defendant was apprised of the fact it had been sanctioned during discovery and the posttrial issue was simply an accounting. Accordingly, defendant's assertion that this was simply a posttrial action to obtain some monetary relief in light of the verdict rings false.

Second, defendant itself moved to remove Lichtor in its pretrial motion. The trial court reviewed all of this and determined that granting defendant the remedy it sought without any sanction would cut against the spirit and design of the rule. The transcripts of the hearings clearly specifies the trial court's reasoning. The court found that it was clear that Lichtor refused to comply with the document subpoena and, more importantly, that defendant was advised of this in advance of the deposition. Because plaintiff's unnecessary expense "could have been prevented by merely a phone call," the trial court granted the sanction.

Rule 219 clearly envisions a sanction of a reasonable attorney fee and expenses. The rule also grants discretion to impose a monetary penalty where the violation is wilful. Unlike that scenario, or the numerous cases cited by defendant where the penalty imposed was dismissal of the action, the trial court did not impose a penalty, but granted plaintiff the direct expenses and costs related solely to Lichtor's deposition. The court noted that Lichtor had numerous years of experience testifying in such matters and was familiar with production requirements.

Furthermore, the court stated that a party has the ability to tell a witness exactly what is needed, what must be produced and prepare them for such production and questioning. The court found that defendant was apprised of the fact Lichtor would not cooperate prior to the

23

Nos. 1-08-3605 & 1-08-3606 (Cons.)

deposition and could easily have been withdrawn. The record supports this finding and that the grant of fees and costs for plaintiff's time and effort wasted was a proportionate sanction and defendant does not argue that plaintiff's computation of time, fees and costs was incorrect. Accordingly, it was not an abuse of discretion to grant plaintiff's motion for sanctions and subsequent petition for fees and costs.

### III. CONCLUSION

In light of the foregoing, the decision of the trial court is affirmed.

Affirmed.

QUINN and COLEMAN, JJ., concur.

24

Nos. 1-08-3605 & 1-08-3606 (Cons.)

| | REPORTER OF DECISIONS – ILLINOIS APPELLATE COURT<br>(Front Sheet to be Attached to Each Case) |
|---|---|
| Please Use Following Form:<br><br>Complete TITLE of Case | GERALDINE NEW,                                          Plaintiff-Appellee,<br>v.<br>PACE SUBURBAN BUS SERVICE, a division of REGIONAL TRANSIT AUTHORITY, a municipal corporation,,                      Defendant-Appellant.<br>GERALDINE NEW,<br><br>                                         Plaintiff-Appellant,<br><br>v.<br><br>PACE SUBURBAN BUS SERVICE, a Division of Regional Transit Authority, a municipal corporation,                            Defendant-Appellee. |
| Docket No.<br><br>COURT<br><br>Opinion Filed | Nos. 1-08-3605 & 1-08-3606 (cons.)<br>Appellate Court of Illinois<br>First District, THIRD Division<br><br>January 27, 2010<br>(Give month, day and year) |
| JUSTICES | PRESIDING JUSTICE MURPHY delivered the opinion of the court:<br><br>Quinn and Coleman, JJ.,                                     concur [s] |
| APPEAL from the Circuit Ct. of Cook County, Criminal Div. | Lower Court and Trial Judge(s) in form indicated in the margin:<br><br>The Honorable       James P. McCarthy      , Judge Presiding. |
| For APPELLANTS, John Doe, of Chicago.<br><br>For APPELLEES, Smith and Smith of Chicago, Joseph Brown, (of Counsel)<br><br>Also add attorneys for third-party appellants or appellees. | Indicate if attorney represents APPELLANTS or APPELLEES and include attorneys of counsel. Indicate the word NONE if not represented.<br><br>Attorney for **Plaintiff-Appellee/Appellant:**     Parente & Norem, P.C.<br>                                      Timothy Quinn<br>                                      221 N. La Salle Street, Suite 2700<br>                                      Chicago, IL  60601<br>                                      Phone: 312.641.5926<br><br>Attorneys for **Defendant-Appellant/Appellee:**     Kevin V. Boyle<br>                                      Catherine Basque Weiler<br>                                      Swanson, Martin & Bell, LLP<br>                                      330 N. Wabash, Suite 3300<br>                                      Chicago, IL  60611<br>                                      Phone: 312.321.9100 |